**MAHL BROTHERS OIL
CO., INC. Plaintiff,**

v.

**ST. PAUL FIRE & MARINE
INS. CO., Defendant.**

No. 02–CV–476–A.

United States District Court,
W.D. New York.

Feb. 19, 2004.

Jaeckle, Fleischmann & Mugel (John T. Kolaga, of Counsel), Buffalo, NY, for Plaintiff.

Kenney, Kanaley, Shelton & Liptak, L.L.P. (Judith Treger Shelton, of Counsel), Buffalo, NY, Steptoe & Johnson LLP (John F. O'Connor and Virginia L. White–Mahffey, of Counsel), Washington, DC, for Defendant.

## DECISION AND ORDER

ARCARA, District Judge.

On March 9, 1998, the State of New York Department of Environmental Conservation ("DEC") commenced a lawsuit in New York State Supreme Court against Mahl Brothers Oil Company ("Mahl Bros."), seeking reimbursement for costs the DEC incurred to clean up contamination on Mahl Bros.' property in Springville, New York. Since defendant St. Paul Fire & Marine Insurance Company ("St.Paul"), issued a general liability policy and an umbrella insurance policy covering the property from 1981 to 1983, Mahl. Bros. filed a third party complaint in the state court action naming St. Paul as a third party defendant and seeking defense and indemnification under the policies. Subsequently, St. Paul moved to sever the claims against it from the claims DEC asserts against Mahl Bros. After the motion to sever was granted in state court, St. Paul removed the action between it and Mahl Bros. to this Court pursuant to 28 U.S.C. § 1441.

On July 11, 2002, this matter was referred to the Honorable Leslie G. Foschio, United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). On July 18, 2002, St. Paul filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56. On August 2, 2002, Mahl Bros. filed a motion to remand this action to state court, and a motion pursuant to Fed.R.Civ.P. 56(f) seeking discovery necessary to defendant against St. Paul's summary judgment motion. On September 2, 2003, Magistrate Judge Foschio filed a joint Decision and Order and Report and Recommendation addressing all of the motions.

Magistrate Judge Foschio concluded that the motion to remand should be denied because this Court properly had subject matter jurisdiction over the matter. He next concluded that Mahl Bros.' Rule 56(f) motion for discovery should be denied because there was no indication that further discovery would lead to additional facts relevant to the defense of the motion. Finally, he concluded that St. Paul's motion for summary judgment should be granted because Mahl Bros. failed to timely notify St. Paul of the potential claim against the insurance policies.[1]

The parties filed objections to the Report and Recommendation on September 18, 2003. Mahl Bros. also objected to Magistrate Judge Foschio's Decision and Order with respect to the motion to remand. Responsive papers were filed by both parties on October 10, 2003. The Court heard oral argument on the objections on October 28, 2003.

For the reasons that follow, the Court adopts the primary conclusion in the Report and Recommendation, and grants St. Paul's motion for summary judgment.[2]

---

[1]. The Report and Recommendation also contained alternative recommendations for the Court's consideration in the event the Court disagrees with the primary conclusions in the Report and Recommendation.

[2]. For that reason, the Court does not address Magistrate Judge Foschio's alternate conclusion denying summary judgment to St. Paul on the basis of the environmental exclusion clause. The Court also adopts Magistrate

The Court also finds without merit Mahl Bros.' objection to Magistrate Judge Foschio's Decision and Order denying Mahl Bros.' motion to remand.

### DISCUSSION

The Court reviews *de novo* portions of a Report and Recommendation to which objections have been filed. 28 U.S.C. § 636(b)(1)(B) and (C). When a Magistrate Judge issues a Decision and Order on a non-dispositive matter, a party may still object to the conclusions in the Decision and Order. However, the Magistrate Judge's Decision and Order will stand unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

*Remand Motion*

Magistrate Judge Foschio concluded in his Report and Recommendation that this action was properly removed by St. Paul and that the Court has diversity jurisdiction over the subject matter in this case. No party objects to that conclusion. Mahl Bros. argues, however, that judicial economy would best be served by remand of this action to state court.[3] Mahl Bros. states that if both cases are tried in state court, it will be spared duplicative discovery costs. Considering and rejecting this judicial economy argument in his Report and Recommendation, Magistrate Judge Foschio noted that the issues involved in Mahl Bros. action against St. Paul are completely different from the issues involved in the DEC litigation, and that Mahl Bros. will not necessarily incur duplicative discovery costs. In its objections to Magistrate Judge Foschio's Decision and Order, Mahl Bros. has provided no basis for this Court to conclude that Magistrate Judge Foschio's decision is clearly erroneous or contrary to law. Therefore, the objection is denied.

*Summary Judgment Motion*

Mahl Bros. objects to Magistrate Judge Foschio's conclusion that it failed to timely notify St. Paul of a potential claim against the insurance policies. Mahl Bros. argues that the issue of whether notice is timely is one for the trier of fact and that Mahl. Bros. has raised a genuine issue of material fact as to whether its proffered excuses for delaying notification to St. Paul are reasonable under all of the facts and circumstances of the case.

There are two insurance policies at issue in this case. The general liability policy required Mahl Bros. to notify St. Paul of an occurrence which may result in a claim against the policy "as soon as possible" after the occurrence of the event. The umbrella policy required Mahl Bros. to provide notice to St. Paul "as soon as practicable" after the occurrence. The issue on this motion is whether Mahl Bros. provided timely notice to St. Paul, and, if not, whether a genuine issue of material fact exists as to the merit of any proffered excuse.

■ Under New York law, an insured has a duty to notify its insurer "upon knowledge of facts sufficient to alert the insured to a reasonable possibility of the

---

Judge Foschio's conclusion denying Mahl Bros.' motion for discovery pursuant to Fed. R.Civ.P. 56(f).

**3.** In its initial motion papers, Mahl Bros. argued that jurisdiction was essentially manufactured by St. Paul's motion to sever its claims in the state court action. Had St. Paul's claims not been severed, the parties would not have been completely diverse, thus preventing St. Paul from removing the action to this Court based on diversity jurisdiction. Mahl Bros. appears to have abandoned this argument in its objections to the Report and Recommendation. Mahl Bros. objects to Magistrate Judge Foschio's denial of the motion to remand only on the basis that it would be more efficient if all of Mahl Bros.' claims were heard in state court. The Court construes Mahl Bros. to have abandoned its earlier position that jurisdiction was manufactured by St. Paul.

existence of a potentially covered claim." *TIG Insurance Co. v. Town of Cheektowaga*, 142 F.Supp.2d 343, 368 (W.D.N.Y. 2000). The insured's receipt of a potentially responsible party ("PRP") letter has been held to trigger the duty to notify the insurer. *Id.* When notice is delayed, the question of whether the delay is excusable is generally one of fact for the jury, unless no excuse for the delay is proffered or the excuse is meritless as a matter of law. *Olin Corp. v. Insurance Co. of North America*, 966 F.2d 718, 724 (2d Cir.1992).

It is undisputed that Mahl Bros. first received a PRP letter from the DEC on February 8, 1994. Therefore, Mahl Bros. duty to notify St. Paul was triggered on or about February 8, 1994. Although the matter is disputed, for purposes of this motion, the Court presumes that St. Paul received notice of the potential claim on June 3, 1996, the earliest date on which Mahl Bros. contends it provided notice.[4] As noted by Magistrate Judge Foschio, notice provided more than two years after receipt of the PRP letter is not timely, and Mahl Bros. has not provided any authority to the contrary. Therefore, the Court must consider whether there is a genuine issue of material fact regarding the merit of Mahl Bros.' proffered excuses for the delay.

■ Mahl Bros. contends that it reasonably believed that it was not liable for the cleanup costs because it was not a discharger as defined by New York Navigation Law and because the DEC allowed Mahl Bros. to negotiate with its tenant in order to effectuate a voluntary cleanup. Magistrate Judge Foschio concluded that the proffered excuse is meritless as a matter of law because New York Navigation Law imposes strict liability for cleanup costs on landowners. In support of that proposi-

tion, the Magistrate Judge cited the New York Court of Appeals case of *State v. Green*, 96 N.Y.2d 403, 729 N.Y.S.2d 420, 754 N.E.2d 179 (2001). Mahl Bros. now argues that Magistrate Judge Foschio's conclusion was erroneous, and its belief in nonliability was reasonable because landowners had not been held strictly liable when Mahl Bros. delayed notice to St. Paul.

Mahl Bros. is correct that the New York Court of Appeals had not definitively stated until 2001 in *State v. Green*, that landowners could be held strictly liable for contamination cleanup costs. However, as early as 1995, in *White v. Long*, 85 N.Y.2d 564, 626 N.Y.S.2d 989, 650 N.E.2d 836 (1995), the New York Court of Appeals acknowledged that strict liability for landowners was an undecided issue by that Court. The Court also recognized that lower New York courts had interpreted the Navigation Law to hold landowners liable for cleanup costs regardless of whether or not that owner caused or contributed to the discharge. *Id. (citing Matter of White v. Regan*, 171 A.D.2d 197, 575 N.Y.S.2d 375 (3d Dept. 1991)). Finally, in stating its holding that landowners could bring suit for indemnification from actual dischargers, the Court again acknowledged that landowners might be held liable under the Navigation Law. *Id.* ("A current owner may be liable for clean-up costs as against the Fund ... "). Therefore, at the time during which Mahl Bros. delayed providing notice to St. Paul, at best, there was a possibility that Mahl Bros. could be held liable for the cleanup costs incurred by the DEC, whether or not Mahl Bros. considered itself a discharger. Therefore, Mahl Bros. excuse for failure to notify St. Paul until June 1996, is meritless as a matter of law.

---

4. St. Paul contends that it did not receive notice until March 24, 1998, after the DEC

commenced the action against Mahl Bros.

Moreover, even if Mahl Bros. believed that, because it was negotiating a voluntary cleanup with its tenant, the DEC would not implement a cleanup or bring a claim for reimbursement of cleanup costs, the DEC's letter of December 26, 1995 provided a firm deadline of January 26, 1996 by which any agreement was to be made. Mahl Bros. knew that no agreement had been reached by January 26, thus, the likelihood of a claim against the policies was not only possible, but *probable* at that time. Any belief that the DEC would not seek reimbursement costs from Mahl Bros. was no longer reasonable after January 26, 1996. Therefore, Mahl Bros.' proffered excuse for its delay is unreasonable as a matter of law.

## CONCLUSION

For the reasons stated above, Plaintiff's objections to Magistrate Judge Foschio's Decision and Order and Report and Recommendation are denied, and Mahl Bros. claims are dismissed. The Clerk of the Court should take all steps necessary to close the case.

IT IS SO ORDERED.

REPORT and RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on July 11, 2002 for all pretrial matters. The matter is presently before the court on a motion filed by Defendant on July 18, 2002 for summary judgment (Doc. No. 6) and on motions filed by Plaintiff on August 2, 2002 to remand the action to New York Supreme Court (Doc. No. 16), and on August 26, 2002 for discovery pursuant to Federal Rule of Civil Procedure 56(f) (Doc. No. 18).[1]

## BACKGROUND

Plaintiff Mahl Bros. Oil Co., Inc. ("Plaintiff" or "Mahl Bros.") commenced this insurance indemnification and defense action against Defendant St. Paul Fire and Marine Insurance Company ("Defendant" or "St. Paul") as a third-party action in New York Supreme Court, Erie County, on November 16, 2001. Mahl Bros. is a New York corporation and St. Paul is a Minnesota company. Plaintiff essentially seeks a court order directing Defendant to defend and indemnify Plaintiff with regard to an environmental action commenced by the State of New York ("the State") against Griffith Oil Co., Inc. ("Griffith Oil"), Sugar Creek Stores, Inc. ("Sugar Creek") and Mahl Bros., on March 9, 1998 in New York Supreme Court, Albany County, pursuant to New York Navigation Law ("N.Y.Navig.Law") Art. 12, § 192 (McKinney 1989)[2] in which the State seeks reimbursement of $ 180,962.43 expended for the removal, mitigation and future containment of pe-

---

**1.** As the issues in the dispositive and nondispositive motions currently pending in this action are intertwined, the court addresses the motions together in the interests of clarity and judicial economy. Further, the undersigned considers a matter of remand as not dispositive since it implicates only the question of whether there is a proper basis for federal jurisdiction to support removal and neither reaches a determination of the merits of a plaintiff's claims nor of defendant's defenses or counterclaims. Following the decision on remand, the parties may prosecute such claims or defenses, including related dispositive motions, if any, in whichever court the decision may direct the action to proceed. *Holt v. Tonawanda Coke Corp.*, 802 F.Supp. 866 (W.D.N.Y.1991); *Acme Electric Corp. v. Sigma Instruments. Inc.*, 121 F.R.D. 26 (W.D.N.Y.1988). Should, however, the District Judge disagree, then the undersigned's finding regarding the motion to remand should be treated as a recommendation.

**2.** Unless otherwise indicated, references to N.Y. Navig. Law are to McKinney 1989.

troleum products discharged onto property owned by Plaintiff ("the underlying action"). A motion to change venue to Erie County, filed by Plaintiff on May 8, 1998, was granted on June 10, 1998 by New York Supreme Court Justice Bernard J. Malone. Defendant moved to sever the third-party coverage action from the underlying action and New York Supreme Court Justice Donna M. Siwek, by Order dated June 6, 2002 ("Justice Siwek June 6, 2002 Order"),[3] severed Plaintiff's cross claims against Defendant. Following the severance, Defendant, on July 3, 2002, removed the matter to this court on the basis of diversity jurisdiction.[4] Defendant's answer to the Complaint was filed in this court on July 18, 2002.

On July 18, 2002, Defendant filed a motion for summary judgment, accompanied by a Memorandum of Law (Doc. No. 7) ("Defendant's Memorandum"), the Affidavit of Denise L. Kleppinger (Doc. No. 8) ("Kleppinger Affidavit") with attached exhibits, and a Statement of Undisputed Material Facts (Doc. No. 9). On August 2, 2002, Plaintiff filed a motion to remand the action to New York Supreme Court, Erie County. Attached to the motion is the Affidavit of John T. Kolaga, Esq., in Support of Motion to Remand Action to New York State Supreme Court ("Kolaga Affidavit"), and exhibits. On August 26, 2002, Plaintiff filed a motion pursuant to Federal Rule of Civil Procedure 56(f) seeking discovery necessary to prepare its response to Defendant's pending summary judgment motion. Attached to the motion are the Affidavits of Matthew J. Mahl ("Mahl Affiavit") and John T. Kolaga, Esq. ("Kolaga Rule 56(f) Affidavit"), along with Exhib-

its A through F. Plaintiff also filed on August 26, 2002, a Response to Defendant's Statement Pursuant to Local Rule 56 (Doc. 19). On August 29, 2002, Plaintiff filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Cross–Motion for Rule 56(f) Relief (Doc. No. 22) ("Plaintiff's Memorandum"). Defendant, on September 5, 2002, filed a Memorandum of Law in Opposition to Plaintiff's Motion to Remand (Doc. No. 23) ("Defendant's Response Memorandum"). On September 23, 2002, Defendant filed a Reply Memorandum in Support of Summary Judgment (Doc. No. 24) ("Defendant's Reply Memorandum"). On September 16, 2002, Plaintiff filed a Reply Memorandum of Law in Further Support of Motion to Remand (Doc. No. 26) ("Plaintiff's Reply Memorandum").

Based on the following, Defendant's motion for summary judgment (Doc. No. 6) should be GRANTED; Plaintiff's motion to remand the matter to New York Supreme Court (Doc. No. 16) is DENIED and Plaintiff's cross motion for discovery pursuant to Rule 56(F) (Doc. No. 18) is DENIED.

### FACTS [5]

This insurance indemnification and defense action concerns premises owned by Plaintiff Mahl Bros. Oil Co., Inc., located at the northeast corner of the intersection of Route 219 and Waverly Street in Springville, New York ("the Site"). Between 1879 and 1974, crude oil and refined petroleum products were transported from the Ashland Oil Company refinery in Tonawanda, New York through petroleum

---

3. Exh. 11 to Declaration of John F. O'Connor, Esq. (Docket No. 2).

4. Justice Siwek granted the motion to sever the third-party action from the underlying action on the basis that New York law prohibits the joinder of an insurance coverage claim

with the underlying action for which the insured seeks insurance coverage. Justice Siwek June 6, 2002 Order at 3–4.

5. The fact statement is taken from the pleadings and motion papers filed in this action.

product pipelines previously located beneath the Site. The underground pipelines' poor condition caused them to be abandoned in 1974. Surface commercialization of the Site commenced in 1972 when Plaintiff constructed facilities for wholesale storage and retail sale of petroleum fuel.

Defendant issued two insurance policies to Plaintiff. The first policy was primary policy 631NA5508 ("the primary policy") covering the period December 31, 1980 to December 31, 1983.[6] The second policy was an umbrella excess policy 531XA9489 ("the umbrella excess policy") covering the period December 31, 1981 to December 31, 1982.[7] Plaintiff is obligated under both the primary policy and the umbrella excess policy (collectively, "the insurance policies") to notify Defendant of any occurrence for which Plaintiff may seek coverage under the insurance policies. In particular, and as relevant to the instant action, the primary policy provides:

> If there's an accident or incident covered under this policy, you [Plaintiff] must: 1. Tell us [Defendant] or our agent what happened as soon as possible. Include the time and place of the event and the names and addresses of any witnesses and injured people....

Primary Policy, Insuring Agreement at 1.

The umbrella excess policy provides:

> (1) In the event of an occurrence, which appears likely to involve this Policy, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured [Plaintiff] to the Company [De-

fendant] or any of its authorized agents as soon as practicable.

Umbrella Excess Policy at 9.

Both of the insurance policies also contain pollution exclusions barring coverage for liability attributable to the discharge of contaminants unless such discharge is both sudden and accidental. Specifically, the primary policy provides:

> Pollution: We [Defendant] won't cover liability claims for injury or damage caused by the continuous or intentional discharge or release of pollutants such as: Smoke. Vapors. Soot. Fumes. Acids. Alkalis. Toxic chemicals, liquids or gases. Or waste materials. But we [Defendant] will cover sudden accidents involving these pollutants.

Primary Policy, Insuring Agreement at 3.

The umbrella excess policy provides:

[t]his policy shall not apply:

> \* \* \* \* \* \*

> (j) to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

Umbrella Excess Policy at 6–7.

Beginning on January 1, 1986, Griffith Oil leased the wholesale fuel storage operation from Mahl Bros. Mahl Bros. continued to run the resale gasoline operation, purchasing its gasoline fuel from Griffith Oil, until 1992 when Griffith Oil began leasing the resale gasoline operation.

In January 1994, the New York State Department of Environmental Conserva-

---

6. Kleppinger Affidavit Exh. A.

7. Kleppinger Affidavit Exh. B.

tion ("DEC") detected petroleum contamination at the Site while performing environmental testing in connection with a construction project on nearby property. By letter dated February 8, 1994 ("February 8, 1994 Letter"),[8] the DEC advised that Plaintiff, as the owner of the underground petroleum storage tanks at the Site, had been "identified as a potentially responsible party" and if Plaintiff were ultimately determined to be responsible for the contamination, Plaintiff would be liable for all costs incurred by the DEC in connection with the investigation and remediation of the Site.

In May 1994, the DEC authorized and funded a soil and groundwater investigation performed by Huntington/Empire Soil Investigations, Inc. ("Empire"), an environmental consulting firm retained by the DEC. Based on the results of Empire's investigation, the DEC, by letter dated July 12, 1994 ("July 12, 1994 Letter"),[9] advised Plaintiff with regard to the contamination at the Site that the DEC "consider both Mahl Bros. Inc. and Griffith Oil Company as potentially responsible parties for the contamination." Plaintiff suggested, and the DEC agreed, that additional data identifying more precisely the source of the contamination and the remediation area was needed.

An April 11, 1995 meeting between Mahl Bros. Vice President Matthew Mahl and DEC Assistant Engineering Geologist Timothy E. Dieffenbach ("Dieffenbach") at which responsibility for the contamination at the Site was discussed was memorialized in a letter dated April 17, 1995, from Mahl Bros. to the DEC ("April 17, 1995 Letter").[10] Although Matthew Mahl ad-

mitted that the DEC had requested Mahl Bros. "to accept responsibility for remediating the petroleum-hydrocarbons under a Stipulation Agreement," he also questioned whether Mahl Bros. was the source of such contamination, stating he would not sign any stipulation agreement without more information as to the contamination source. April 17, 1995 Letter at 1–2.

Mahl Bros. submitted a Site Investigation Work Plan dated May 26, 1995 ("the Work Plan") to the DEC. The DEC approved the Work Plan on May 30, 1995. On June 9, 1995, Conestoga–Rovers & Associates ("Conestoga–Rovers"), an environmental consulting firm retained by Mahl Bros. in connection with the Site contamination investigation, implemented the field activities specified in the Work Plan, completing the investigation on June 21, 1995. In its Site Investigation Report, dated August 1985 ("Site Investigation Report"),[11] Conestoga–Rovers concluded that the contamination at the Site resulted from a petroleum spill occurring at the Site after 1985. Site Investigation Report, ¶ 7.3.

Plaintiff cooperated with the DEC's investigation regarding the source of the Site's contamination. The DEC concluded that "off-site contamination originated within the site property boundaries and that contaminant source removal would allow for natural attenuation of off-site contaminants." Dieffenbach Letter Dated October 24, 1995.[12] Plaintiff concurred in the DEC's conclusion, but advised Dieffenbach that Plaintiff was financially unable to perform Site remediation activities as approved by the DEC without financial assistance from Griffith Oil, with whom Plaintiff was attempting to negotiate a financial agreement. Matthew Mahl Letter

8. Kleppinger Affidavit Exh. D.

9. Kleppinger Affidavit Exh. E.

10. Kleppinger Affidavit Exh. F.

11. Kleppinger Affidavit Exh. H.

12. Kleppinger Affidavit Exh. J.

Dated November 3, 1995.[13] By letter dated December 26, 1995, DEC Environmental Engineer Robert N. Leary ("Leary") recognized Plaintiff's participation in the investigation and design of a remedial system to address the contamination at the Site, and that Plaintiff was attempting to reach an agreement with Griffith Oil for financial assistance with the remediation. Leary nevertheless advised that if no such agreement was reached with Griffith Oil by January 26, 1996 with remediation by Spring 1996, the DEC would implement remediation and hold both Plaintiff and Griffith Oil responsible for all remediation costs incurred by the State. *Id.* When Plaintiff and Griffith Oil failed to reach any agreement, the State commenced remediation of the Site.

On March 9, 1998, the State filed the underlying action in New York Supreme Court, seeking reimbursement of $ 180,-962.43 spent in remediating the Site, as well as future containment costs. By letter dated March 24, 1998 ("March 24, 1998 Letter"),[14] Plaintiff's attorney, Terry C. Burton, Esq. advised Defendant of the lawsuit. In the March 24, 1998 Letter, Plaintiff refers to a letter dated June 3, 1996 by Plaintiff's former attorney, Rick W. Kennedy, Esq., advising Defendant of the DEC's investigation into a petroleum product spill at the Site ("June 3, 1996 Letter"). Plaintiff also states

> [y]ou were notified of this investigation in light of the fact that St. Paul Fire and Marine Insurance Co. provided comprehensive general liability and umbrella excess liability coverage with respect to this property under policy nos. 631NA5508 and 531XA9489.

March 24, 1998 Letter at 1.

Defendant denies ever having received the June 3, 1996 Letter. Kleppinger Affidavit, ¶ 3. In a letter dated April 7, 1998, Plaintiff provided Defendant with a copy of the June 3, 1996 Letter.[15]

Plaintiff's third-party insurance coverage action against Defendant was commenced on November 16, 2001. After Justice Siwek severed Plaintiff's claims against Defendant from the underlying action on June 6, 2002, Defendant, on July 3, 2002, removed the matter to this court on the basis of diversity jurisdiction.

## DISCUSSION

### 1. *Motion to Remand*

Plaintiff urges the court to remand this case to New York Supreme Court, Erie County, arguing that removal was improper because removal is unduly prejudicial to Plaintiff, diversity of citizenship did not exist when the action was originally filed in state court as a third-party claim to the underlying action, and a remand to state court will promote judicial economy. Kolaga Affidavit ¶¶ 8–9; Plaintiff's Reply Memorandum at 2–3. Defendant argues in opposition to remand that diversity jurisdiction existed upon Justice Siwek's June 6, 2002, severing the third-party insurance coverage action from the underlying action, thereby enabling removal, and that removal is not prejudicial to Plaintiff. Defendant's Response Memorandum at 1–2.

Removal of a state court proceeding to federal court is provided for under 28 U.S.C. § 1441(a) which states in pertinent part:

> any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United

---

13. Kleppinger Affidavit Exh. K.

14. Kleppinger Affidavit Exh. N.

15. Kleppinger Affidavit Exhs. O and P.

States for the district and division embracing the place where such action is pending.

Further, whether an action is removable based on diversity jurisdiction is determined based on the pleadings as originally filed. *Crucible Materials Corporation v. Coltec Industries, Inc.*, 986 F.Supp. 130 131–32 (N.D.N.Y.1997). Accordingly, 28 U.S.C. § 1441(a) permits removal of only those actions which originally could have been filed in federal district court.

The parties do not dispute that a lack of diversity rendered this court without original jurisdiction in this court over the instant insurance coverage action when it was initially filed as a third-party action to the underlying environmental action in New York Supreme Court. Complete diversity among the parties existed, however, upon Justice Siwek's June 6, 2002 Order severing the third-party insurance coverage action from the underlying action. Accordingly, Defendant removed the matter to this court, pursuant to 28 U.S.C. § 1446(b) which provides in relevant part

[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

In particular, Defendant removed the instant action on July 3, 2002, within 30 days of Justice Siwek's June 6, 2002 Order severing the instant action from the underlying action. Plaintiff does not contend that such removal was untimely.

Because federal courts are courts of limited jurisdiction, and as removal of a case raises issues of federalism, removal statutes are narrowly construed and doubts are resolved against removal. *Somlyo v. J. Lu–Rob Enterprises, Inc.*, 932 F.2d 1043, 1045–46 (2d Cir.1991). The removal statute is construed according to federal law. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *Somlyo, supra*, at 1047. Further, it is the removing party's burden to demonstrate the existence of federal jurisdiction. *United Food & Commercial Workers Union, Local 919, AFL–CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)("Where, as here, jurisdiction is asserted by a defendant in a removal petition, it follows that the defendant has the burden of establishing that removal is proper . . . .").

As stated, when Plaintiff initially filed its third-party insurance coverage action against Defendant, there was an absence of complete diversity of citizenship among the parties. However, with the third-party action severed from the underlying action, and given that Plaintiff is a New York corporation and Defendant is a Minnesota company, this court has jurisdiction over the action based on diversity of citizenship. Defendant maintains that the severance of the instant action from the underlying action created a new action that was properly subject to removal on the basis of diversity jurisdiction. Plaintiff nevertheless maintains that as severance of the instant action from the underlying action was precipitated by Defendant's motion, such severance was an involuntary change which, under the "voluntary-involuntary rule," does not create removability. Kolaga Affidavit ¶¶ 10–22; Plaintiff's Reply Memorandum at 1–3. Defendant asserts to the contrary that the "voluntary-

involuntary rule" has not been recognized by the Second Circuit and, moreover, draws an analogy between Plaintiff's commencement of the instant action as a third-party action in violation of prevailing New York law prohibiting litigation of an insurance coverage issue in the same action for which the insurance coverage is sought, and the improper joinder of a party to defeat diversity jurisdiction and avoid removal. Defendant's Response Memorandum at 6–12.

The so-called "voluntary-involuntary rule" refers to the principle accepted by some courts that the involuntary dismissal in state court of non-diverse parties does not render an action removable. *See Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n. 2 (2d Cir.1980) (citing cases and 14 Wright, Miller & Cooper, § 3723). "The purpose of this distinction is to protect against the possibility that a party might secure a reversal on appeal in state court of the non-diverse party's dismissal, producing renewed lack of complete diversity in the state court action, a result repugnant to the requirement in 28 U.S.C. § 1441 that an action, in order to be removable, be one which could have been brought in federal court in the first instance." *Quinn, supra* (internal citations omitted). In *Quinn,* however, the Second Circuit did not have the opportunity to discuss the applicability of the "voluntary-involuntary rule" as the plaintiff's time to appeal the involuntary dismissal of the non-diverse defendants had elapsed, negating the possibility of the inconsistencies the rule is designed to avoid. *Id.* Moreover, the Second Circuit stated that the "plaintiff's failure to take an appeal constituted the functional equivalent of a 'voluntary dismissal.'" *Id.* The court's research reveals no other case in which the Second Circuit has considered the "voluntary-involuntary rule."

Similarly to *Quinn,* in the instant case, Plaintiff did not appeal Justice Siwek's June 6, 2002 Order severing the instant action from the underlying action. As such, the circumstances under which the case became removable on the basis of diversity jurisdiction constitute the functional equivalent of a voluntary act. Accordingly, Defendant's removal of the instant action to this court is not barred by the "voluntary-involuntary rule."

■ Plaintiff also asserts that Defendant's removal of the newly severed action on July 3, 2002 to this court was untimely as, although the case was removed within 30 days of Justice Siwek's June 6, 2002 Order, such removal did not occur within one year of the date the underlying action was filed as 28 U.S.C. s 1446(b)'s language that "a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action" requires. Plaintiff's Reply Memorandum at 4. In other words, Plaintiff measures the one year outer limit imposed by 28 U.S.C. § 1446(b) on the removal of a case that has become removable only because of a court order from the date the underlying action was filed, *i.e.,* March 9, 1998, rather than the date Plaintiff's crossclaim was filed, *i.e.,* November 16, 2001. Plaintiff, however, erroneously relies on *Green Point Savings Bank v. Hidalgo,* 910 F.Supp. 89 (E.D.N.Y.1995) and *Bertrand v. Vingan,* 899 F.Supp. 1198 (S.D.N.Y.1995) in support of this argument.

Specifically, *Hidalgo, supra,* did not involve a third-party action that became removable only after having been severed from the underlying action in state court. Rather, the defendant in *Hidalgo* filed a notice of removal more than 30 days after the date the relevant action was filed in state court. *Hidalgo, supra,* at 91. The court, in remanding the matter to state

court based on untimely removal, commented that insofar as the action, as originally filed in state court, was not removable, but later became so based on some unspecified event occurring afterward, the removal was still untimely under 28 U.S.C. § 1446(b) because more than one year had elapsed since the action was originally filed. *Id.* at 91 n. 2. Similarly, in *Bertrand, supra,* the court remanded an action to state court based on untimely removal because "no jurisdiction altering events occurred after the complaint was served," such that 28 U.S.C. § 1446(b)'s language imposing the one year outer limit was irrelevant to the timeliness of the removal. Here, the instant action was removed both within 30 days of the order severing the third-party action from the underlying action, and within one year of the date the third-party complaint was filed in state court, in accordance with 28 U.S.C. § 1446(b).

■ Nor is there any basis for Plaintiff's assertion that removal of this case is both prejudicial to Plaintiff and does not promote judicial economy given that the same unresolved facts are at issue in both the instant action and the underlying action. *See* Kolaga Affidavit ¶¶ 4–5, 8; Plaintiff's Reply Memorandum at 5–6. Rather, at issue in the underlying action in which the State seeks to recover from Plaintiff the cost of the remediation of the Site is whether the discharge that resulted in the contamination of the Site can be attributed to Plaintiff. However, the issues present in the instant action seeking a court order directing Defendant to provide a defense to the underlying action and indemnify Plaintiff should Plaintiff ultimately be found liable for the contamination at the Site, concern when Plaintiff was required to notify Defendant of the potential claim against Plaintiff, how such contamination occurred, and whether the contamination occurred during the period for which Plaintiff had insurance coverage through Defendant. Insofar as the same evidence may be necessary to litigate both actions, Plaintiff does not explain why the same evidence obtained through discovery in connection with one action cannot be used in connection with the other action, or why discovery in both actions cannot be conducted at the same time, thus avoiding duplicating discovery efforts. Significantly, even if the court were to remand the instant action to state court, Plaintiff's discovery in the instant action would necessarily be separate from its discovery in the underlying action as Defendant St. Paul is not a party to the underlying action.

Accordingly, Plaintiff's motion to remand the case to New York Supreme Court, Erie County, is DENIED.

## 2. *Summary Judgment*

Defendant seeks summary judgment dismissing the action in its entirety. Defendant argues in support of summary judgment that Defendant is not required to either indemnify or defend Plaintiff in connection with the underlying action as Plaintiff failed to notify Defendant in a timely manner of the occurrence of a covered event, the contamination at the Site qualifies as pollution for which coverage is expressly excluded under the insurance policies, and the Conestoga–Rovers Site Investigation Report concluded that the contamination at the Site resulted from a petroleum spill occurring after 1985, well after the period for which the insurance policies provided coverage.[16] In opposition to summary judgment Plaintiff essentially argues that its June 3, 1996 Letter to

---

**16.** An insurer's duty to defend is broader than the duty to indemnify. *EAD Metallurgical Inc. v. Aetna Casualty and Surety Co.,* 905 F.2d 8, 11 (2d Cir.1990). Separate analysis of Defendant's duties to defend and to indemnify is thus unnecessary. *Id.*

Defendant provided timely notification of the State's potential environmental claim regarding the Site's contamination as Plaintiff had doubts as to the actual cause of such contamination. Plaintiff further maintains that summary judgment is precluded by unresolved issues of fact as to when discharge which caused the Site to become contaminated occurred and whether such discharge qualifies for the "sudden and accidental" exception to the insurance policies' pollution exclusion.

Summary judgment of a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). The moving party for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain a summary judgment. *Catrett, supra*, at 331, 106 S.Ct. 2548. The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999) (citing *Anderson, supra*, at 255, 106 S.Ct. 2505).

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson, supra*, at 247–48, 106 S.Ct. 2505. Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [Fed.R.Civ.P. 56],' and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'

*Catrett, supra*, at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56).

Thus, "as to issues on which the nonmoving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 742 (2d Cir.1998).

Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). In opposing a motion

for summary judgment a party "may not simply rely on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Goenaga, supra,* at 18 (citing cases).

As stated, this case is before the court pursuant to diversity jurisdiction. A district court sitting in diversity applied the substantive law of the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Thrift Drug, Inc. v. Universal Prescription Administrators,* 131 F.3d 95, 97 (2d Cir.1997). Here, the parties do not dispute that the substantive law of New York, the forum state, applies.

### A. *Rule 56(F) Discovery*

Preliminarily, Plaintiff moves for discovery under Federal Rule of Civil Procedure 56(f) which provides:

> [s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f).

According to Plaintiff, the motion for summary judgment should be stayed as Plaintiff has not yet had "a full and fair opportunity to conduct discovery on the merits of the action" and its legal theories may change as the record is developed. Plaintiff's Response Memorandum at 22–23. Plaintiff specifically seeks to depose Defendant and to subpoena non-party witnesses to obtain evidence necessary to establish, "at the very least," questions of fact as to whether Plaintiff provided Defendant with timely notice under the insurance policies and whether the release of contaminants at the Site falls within the insurance policies' pollution exclusions. *Id.* at 24. Defendant urges the court to reject Plaintiff's request for Rule 56(f) discovery as a "stalling tactic" as the requested discovery is unnecessary. Defendant's Reply Memorandum at 8–9.

■ "Federal Rule of Civil Procedure 56(f) provides an opportunity to postpone consideration of a motion for summary judgment and to obtain additional discovery by describing: (i) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful." *Oneida Indian Nation of New York v. City of Sherrill, New York,* 337 F.3d 139, 167 (2d Cir.2003) (*citing Sage Realty Corp. v. Ins. Co. of N. Am.,* 34 F.3d 124, 128 (2d Cir.1994)). "Additionally, the discovery sought must be material to the opposition of the summary judgment motion." *Sage Realty Corp., supra,* at 128 (citing *Hudson River Sloop Clearwater, Inc. v. Department of the Navy,* 891 F.2d 414, 422 (2d Cir.1989)) ("even if plaintiffs had obtained what they stated would be uncovered [through Rule 56(f) discovery], the information would have been insufficient to defeat summary judgment."). Put another way, a litigant seeking Rule 56(f) relief "must show that the material sought is germane to the defense and that is it neither cumulative or speculative, and a bare assertion that the evidence supporting the plaintiff's allegation is in the hands of the defendant is insufficient to justify a denial of a motion for summary judgment under Rule 56(f)." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1138 (2d Cir. 1994). *See also Gray v. Town of Darien,* 927 F.2d 69, 74 (2d Cir.) ("In a summary judgment context, an opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis

upon which to justify the denial of a summary judgment motion.") (internal quotation and brackets omitted), *cert. denied*, 502 U.S. 856, 112 S.Ct. 170, 116 L.Ed.2d 133 (1991). Indeed, "[a] court can reject a request for discovery, even if properly and timely made through a Rule 56(f) affidavit, if it deems the request to be based on speculation as to what potentially could be discovered." *Paddington Partners, supra*, at 1138.

 In the instant case, Plaintiff maintains it seeks discovery as to whether Defendant received Plaintiff's former attorney's letter of June 3, 1996, advising of the DEC's discovery of contamination at the Site approximately 21 months before the State filed the underlying suit against Plaintiff. Plaintiff's Response Memorandum at 24–25. Plaintiff also seeks discovery as to when the contamination at the Site occurred arguing that the Conestoga–Rovers Site Investigation Report indicates that the petroleum contamination at the Site includes pre–1985 gasolines and, as such, a question of fact exists as to whether any contamination occurred during the period for which the insurance policies provided coverage. *Id.* at 25.

As discussed more fully below, Discussion, *infra*, at 22–28, the discovery Plaintiff's seeks through its Rule 56(f) motion will not assist Plaintiff in defeating summary judgment as Plaintiff failed to provide Defendant with timely notice of the occurrence for which it now seeks indemnification and defense pursuant to the insurance policies. Even assuming, *arguendo*, that Defendant did in fact receive the June 3, 1996 Letter, such letter was sent almost 28 months after the DEC advised Plaintiff in the DEC's February 8, 1994 Letter that Plaintiff was considered a potentially responsible party with regard to the contamination at the site. Delays of this length have been held to constitute a failure to provide an insurer with timely notice of the occurrence on which the suit is based and that Plaintiff's subsequent provision of notice of the underlying action within two months of the date the underlying action was filed may be timely does not excuse Plaintiff's untimely notice as to the occurrence on which the underlying action is based. *TIG Ins. Co. v. Town of Cheektowaga*, 142 F.Supp.2d 343, 356 (W.D.N.Y. 2000). Plaintiff's untimely notice of an occurrence also renders irrelevant whether a release of a contaminant at the Site is within the "sudden and accidental" exception to the insurance policies' pollution exclusion, the alternative basis on which Defendant has disclaimed coverage.

The evidence Plaintiff seeks through its Rule 56(f) discovery motion will not help Plaintiff to avoid dismissal of the instant action on the basis of Plaintiff's late notice to Defendant under the insurance policies. Accordingly, Plaintiff's motion for discovery pursuant to Rule 56(f) is DENIED.

### B. *Notification*

As stated, the parties dispute whether Plaintiff provide Defendant with timely notice of the occurrence for which Plaintiff seeks coverage under the policies. Plaintiff maintains that it first notified Defendant of the occurrence in a letter dated June 3, 1996, written by Plaintiff's former attorney. Plaintiff maintains that such notice was timely as Plaintiff's doubts as to the cause of the Site contamination is a credible basis supporting Plaintiff's delay in notifying Defendant of the occurrence. Plaintiff's Response Memorandum at 10–12. Plaintiff further asserts that its belief that it would be able to reach an agreement with Griffith Oil regarding the cleanup of the Site which would shield Plaintiff from liability for the contamination justified Plaintiff's delay in notifying Defendant. *Id.* at 13–17.

As stated, Plaintiff's notification to Defendant of an occurrence was required under the primary policy "as soon as possible" and under the umbrella excess policy "as soon as practicable." Defendant maintains that Plaintiff knew of the State's potential claims against it concerning the Site by February 8, 1994, when the DEC notified Plaintiff that as the owner of the underground petroleum storage tanks at the Site, Plaintiff had been "identified as a potentially responsible party" and if Plaintiff were ultimately determined to be responsible for the contamination, Plaintiff would be liable for all costs incurred by the DEC in connection with the investigation and remediation of the Site. February 8, 1994 Letter. Plaintiff, however, maintains that although it did not notify Defendant of the occurrence until June 3, 1996, such delay does not render the notice untimely given Plaintiff's good faith belief that Plaintiff was not responsible for the contamination at the Site.

 In New York, "an insured's duty to notify an insurer of an occurrence is not solely triggered upon receipt of a formal PRP [potentially responsible party], or a summons and complaint, but accrues upon knowledge of facts sufficient to alert the insured to a reasonable possibility of the existence of a potentially covered claim." *TIG Insurance Company v. Town of Cheektowaga*, 142 F.Supp.2d 343, 368 (W.D.N.Y.2000). *See also Ogden Corporation v. Travelers Indemnity Company*, 924 F.2d 39, 43 (2d Cir.1991) (the insured's duty to notify does not accrue only upon receipt of a formal letter advising that the insured is a potentially responsible party ("a PRP letter") or a summons and complaint). *See also F.N. Burt Co. v. Aetna*

*Casualty & Surety Co.*, 91–CV–30A(F), slip op. at 20–22 (W.D.N.Y. March 14, 1995). Instead, the obligation to provide notice of an occurrence accrues when the facts known to the insured would have suggested to a reasonable person the possibility of a potentially covered claim. *Commercial Union Insurance Company v. International Flavors & Fragrances, Inc.*, 822 F.2d 267, 272 (2d Cir.1987); *Utica Mutual Insurance Company v. Fireman's Fund Insurance Companies*, 748 F.2d 118, 122 (2d Cir.1984). Nevertheless, compliance with notice requirements is a condition precedent to an insurer's liability under the policy, *International Flavors, supra*, at 271, and failure to comply with the notice requirement relieves an insurer of its duty to defend and indemnify, even where there has been no showing by the insurer of prejudice to itself. *Unigard Security Insurance Company, Inc. v. North River Insurance Company*, 79 N.Y.2d 576, 584 N.Y.S.2d 290, 594 N.E.2d 571, 573 (1992); *Security Mutual Ins. Co. v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 340 N.Y.S.2d 902, 293 N.E.2d 76, 78 (1972).

██ With respect to environmental contamination claims, an insured's receipt from the DEC of a PRP letter has consistently been held to trigger an insured's obligation to notify the insurer of the possibility of a potentially covered claim. *See, e.g., TIG Insurance Company, supra*, at 368 (receipt of DEC letter advising of insured's status as PRP triggered insured's duty to notify insurer of possibility of potentially covered claim) *F.N. Burt Co. v. Aetna Casualty & Surety Co.*, 91–CV–30A(F), slip op. at 20–22 (W.D.N.Y. March 14, 1995) (same).[17] *See also Ogden Corp.,*

17. *See also Employers Insurance of Wausau v. Trico Products Corp.*, 1997 Lexis 19684, *22–25 (W.D.N.Y. February 24, 1997) (unreported and unadopted Report and Recommendation of Magistrate Judge Carol E. Heckman recommending that receipt of a DEC letter advising of insured's status as PRP triggered insured's duty to notify insurer of possibility of potentially covered claim).

*supra,* at 43 (letter from landowner to lessee seeking reimbursement for environmental cleanup of property and advising lessee contamination that "appeared" to have resulted from lessee's scrap yard operations held sufficient to trigger lessee's duty to notify lessee's insurer of the possibility of a claim); *Burt Rigid Box, Inc. v. Travelers Property Casualty Corp.,* 126 F.Supp.2d 596, 628–30 (W.D.N.Y.2001) (insured's receipt of DEC letter advising insured had been identified as generator of wastes disposed of at landfill triggered insured's duty to notify its insurers of occurrence regarding landfill), *aff'd in part, rev'd in part,* 302 F.3d 83 (2d Cir.2002).

■■ Accordingly, in the instant case; Plaintiff's receipt of the DEC's February 8, 1994 Letter advising Plaintiff of its PRP status with regard to the Site triggered Plaintiff's obligation to notify Defendant of Plaintiff's potential liability for the investigation and remediation of the contaminated Site. Plaintiff failed, however, to so notify Defendant of the occurrence until, at the earliest, June 3, 1996, the date of the letter which Plaintiff allegedly initially sent Defendant advising of the investigation at the Site and which Defendant denies ever receiving. Assuming, *arguendo,* that Plaintiff did indeed mail and Defendant did receive the June 3, 1996 Letter, such notice, provided almost 28 months after Plaintiff first learned of its PRP status with respect to the Site, was untimely. Indeed, shorter delays in notifying an insurer of an occurrence have been held unreasonable under New York law. *See New York v. Blank,* 27 F.3d 783, 795–96 (2d Cir.1994) (ten month delay unreasonable under New York law); *City of Utica v. Genesee Management, Inc.,* 934 F.Supp. 510, 520–21 (N.D.N.Y.1996) (six months delay unreasonable); *Goodwin Bowler Associates, Ltd. v. Eastern Mutual Insurance Company,* 259 A.D.2d 381, 687 N.Y.S.2d 126, 126 (1st Dep't 1999) (two months delay unreasonable).

As stated, however, Plaintiff offers as excuses for its late notification to Defendant of an occurrence at the Site that it had a reasonable good faith belief that it was not liable for the Site's contamination but, rather, that the contamination occurred while Griffith Oil was in possession of the Site pursuant to a lease with Plaintiff and, as such, Griffith Oil was responsible for any contamination at the Site. The question of whether delayed notification of an occurrence to an insurer generally is excusable is a matter of fact for the jury unless no excuse for the delay is proffered or the excuse is meritless as a matter of law. *Olin Corporation v. Insurance Company of North America,* 966 F.2d 718, 724 (2d Cir.1992) (citing *Public Service Mutual Insurance Company v. Levy,* 87 Misc.2d 924, 387 N.Y.S.2d 962, 965 (1976), *aff'd,* 57 A.D.2d 794, 395 N.Y.S.2d 1 (1st Dep't 1977)). While a late notice of an occurrence may be excused based on a good faith belief of non-liability, *Blank, supra,* no such belief excuses late notice in the instant case as Plaintiff faces strict liability under New York's Oil Spill Act, N.Y. Navig. Law § 171 *et seq.* (McKinney 1993). As such, Plaintiff's belief that Griffith Oil, rather than Plaintiff, caused the Site's contamination is irrelevant to Plaintiff's potential for liability.

Specifically, Article 12 of New York Navigation Law, commonly referred to as the "Oil Spill Act", was enacted to provide for "swift, effective cleanup of petroleum spills that threaten the environment." *State v. Green,* 96 N.Y.2d 403, 729 N.Y.S.2d 420, 754 N.E.2d 179, 182 (2001) (citing N.Y. Navig. Law §§ 170, 171). In furtherance of this goal, New York has "established the 'Environmental Protection and Spill Compensation Fund' ["the Fund"] which finances State cleanup efforts when the discharger is unknown, unwilling or unable to pay these costs." *Green, supra,* at 182 (citing N.Y. Navig.

Law § 179). Upon disbursing monies from the Fund for cleanup, New York then seeks reimbursement from a responsible party. *Green, supra,* at 182 (citing N.Y. Navig. Law §§ 187[1] and 188). "Any person who has discharged petroleum shall be strictly liable, without regard to fault, for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained." N.Y. Navig. Law § 181[1]. As relevant, a "discharge" is defined as "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters." N.Y. Navig. Law § 172[8]. In the instant case, Plaintiff qualifies under the New York Oil Spill Act as a discharger who may be held strictly liable for the petroleum contamination at the Site.

That the Oil Spill Act provides for strict liability for landowners renders irrelevant Plaintiff's proof of fault or knowledge of the contamination. Rather, Plaintiff's status as both owner and lessor of the Site to Griffith Oil establishes that Plaintiff retained the ability to control the potential sources of contamination on the Site. *Green, supra,* at 182 ("As the owner and lessor of the trailer park, [the lessor] had the ability to control potential sources of contamination on its property, including [the lessee's] maintenance of a 275–gallon kerosene tank."). Given that Plaintiff purchased fuel for the gasoline resale facility located on the Site from Griffith Oil, Plaintiff reasonably could have anticipated that Griffith Oil's operation, beginning in 1992, of the Site's gasoline resale facility, may result in a spill of a petroleum product that would contaminate the Site. *Green, supra.*

The New York Court of Appeals has held under circumstances similar to the instant case that to absolve a Plaintiff of any liability for the contamination would be contrary to the New York Legislature's intentions in enacting the Oil Spill Act. *Green, supra,* at 183. According to the Court of Appeals, absolving a landowner and lessor of property from any liability for contamination to the property resulting from the lessee's discharge of the contaminant onto the property would permit the landowner to receive "the benefit of the lease as well as the cleanup." *Green, supra.* "Limiting liability to those who actually cause or contribute to the discharge ... would discourage landowners from promptly cleaning up their contaminated land, leaving the State to shoulder the entire cost of the cleanup while it searches for the party at fault," frustrating future cleanups and unnecessarily delaying and depleting the Fund. *Id.* The Court of Appeals further considered that "[t]he Fund's ability to file a lien on real property owned by dischargers further reflects a legislative policy of holding landowners, [ ], strictly liable for cleanup costs," as "[l]andowners benefit from the State's cleanup efforts and their property 'very often is the only asset * * * which the Fund could go against." *Id.* (citing Sponsor's Mem. in Support, Bill Jacket, L.1991, ch. 488, at 6) (ellipses in original). The harshness of holding a landowner strictly liable under the Oil Spill Act for any discharge that contaminates the landowner's property is abated by N.Y. Navig. Law § 181(5) which "allows a faultless landowner to seek contribution from the actual discharger, even though the landowner itself is liable as a discharger under section 181(1)." *Green, supra,* at 183 (citing *White v. Long,* 85 N.Y.2d 564, 626 N.Y.S.2d 989, 650 N.E.2d 836, 838 (1995)). Significantly, Plaintiff makes no argument to the contrary. Accordingly, Plaintiff is, under N.Y. Navig. Law § 181(1), a discharger. As such, Defendant's motion for summary

judgment should, on this ground, be GRANTED.

## C. *Pollution Exclusion*

Alternatively, Defendant also maintains that the claim for which Plaintiff seeks coverage "falls squarely" within the insurance policies' pollution exclusions. Defendant's Memorandum at 15. Plaintiff, however, asserts that unresolved factual issues as to whether any discharge of petroleum products at the Site was "sudden and accidental" trigger an exception to the insurance policies' pollution exclusion and obligate Defendant to provide coverage. Plaintiff's Response Memorandum at 17–19. According to Plaintiff, if the contamination resulted from " '[a]n accidental and unexpected leak from a sub-surface pipe or tank that continued undetected for a period of time,' " it would qualify as an exception to the insurance policies' pollution exclusion. Plaintiff's Response Memorandum at 18 (quoting *Petr–All Petroleum Corporation v. Fireman's Insurance Company of Newark, New Jersey*, 188 A.D.2d 139, 593 N.Y.S.2d 693, 695 (4th Dep't 1993)).

When an exclusion clause is relied on to deny coverage, it is the insurer's burden to demonstrate the allegations of the underlying claims allege damages attributable to the specific conduct for which coverage has been excluded. *Consolidated Edison Company of New York v. Allstate Insurance Company*, 98 N.Y.2d 208, 746 N.Y.S.2d 622, 774 N.E.2d 687, 691–92 (2002); *Northville Industries Corp. v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 657 N.Y.S.2d 564, 679 N.E.2d 1044, 1048 (1997); *Technicon Electronics Corporation v. American Home Assurance Company*, 74 N.Y.2d 66, 544 N.Y.S.2d 531, 542 N.E.2d 1048, 1050 (1989). Once an insurer satisfies its burden of proof that the claims are within the pollution exclusion, the bur-

den shifts to the insured to demonstrate, either through a reasonable interpretation of the underlying complaint or extrinsic evidence, that the discharge was in fact "sudden and accidental." *Northville, supra*, at 1048. "Shifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist, provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge." *Northville, supra*, at 1049.

An insurer's duty to defend is derived from the allegations of the complaint and the terms of the policy. *Technicon, supra*, at 1050. "The duty of an insurer to defend its insured arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim, or where the insurer 'has actual knowledge of facts establishing a reasonable possibility of coverage.' " *Frontier Insulation Contractors, Inc. v. Merchants Mutual Ins. Co.*, 91 N.Y.2d 169, 667 N.Y.S.2d 982, 690 N.E.2d 866, 868 (1997) (quoting *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 571 N.Y.S.2d 672, 575 N.E.2d 90, 90 (1991)). Further, it is the initial discharge or dispersal of the waste into the environment, rather that the resulting contamination, which is considered in determining whether the claim is within the terms of the pollution exclusion. *Powers Chemco, Inc. v. Federal Ins. Co.*, 74 N.Y.2d 910, 549 N.Y.S.2d 650, 548 N.E.2d 1301, 1302 (1989).

In the instant case, it is undisputed that the pollution exclusion applies to the claims in the underlying action to recover the cost of remediating the site and

neighboring property of petroleum contamination attributed to the underground petroleum storage and retail fuel facilities located at the Site. Accordingly, the burden shifts to Plaintiff, as the insured, to demonstrate that either a reasonable interpretation of the complaint or extrinsic evidence indicates such discharge was "sudden and accidental," thereby negating the pollution exclusion and requiring coverage. *Northville, supra,* at 1048.

"Sudden" and "accidental" have separate meanings and both must be established for the exception to apply. *Northville, supra,* at 1047; *See Technicon, supra,* at 1049 ("If the discharge is not both sudden and accidental, the exception in inapplicable and, therefore, the pollution exclusion from coverage provision is operative."). The term "accidental" as used in the pollution exclusion "includes not only an unintended event but also one 'occurring unexpectedly or by chance.'" *Northville, supra,* at 1047 (quoting Webster's 9th New Collegiate Dictionary at 49). Here, the parties do not dispute that the petroleum product discharge was accidental.

The requirement that a discharge of a contaminant be "sudden" is a temporal element which is met only "by the discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect." *Northville, supra,* at 1048. As every dispersal of a contaminant begins with "the abrupt entry of molecules of the offending substance into the surrounding environment," the sudden discharge element is not established by demonstrating the specific time at which the discharge began, as such a construction of the exception would render its suddenness requirement meaningless. *Northville, supra,* at 1047 (quoting *Northville Industries Corporation v. National Union Fire Insurance Company of Pitts-*

*burgh,* 218 A.D.2d 19, 636 N.Y.S.2d 359, 366 (2d Dep't 1995)).

The facts of *Northville, supra,* are similar to the instant case insofar as the insured, an operator of petroleum storage distribution facilities, brought an action seeking a declaration that its insurers were obligated to provide a defense and indemnification as to an underlying action arising from petroleum leaks from the insured's underground pipelines and pumps. Although the Court of Appeals held that "the temporal aspect of the sudden discharge element would only be met by the discharge, abruptly or within a short timespan, of a significant quantity of the pollutant sufficient to have some potentially damaging environmental effect," the Court of Appeals also stated in *dicta* that "[c]overage, however, would not necessarily be negated entirely if such a discharge continued undetected for some period of time, even though at some point continued release could no longer be deemed sudden or accidental for purposes of the duty to indemnify." *Northville, supra,* at 1148 (citing cases). Nevertheless, "[i]n determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint 'that is linguistically conceivable but tortured and unreasonable.'" *Northville, supra,* at 1049 (quoting *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1428 (2d Cir.1991)). The court thus rejected the assertion that any possible interpretation of the complaint as alleging the subject discharge was sudden and accidental, regardless of how groundless or baseless, defeats the pollution exclusion, given that the complaint contained allegations describing the petroleum leakages as having occurred continuously over

a period of years, suggesting that the discharge was not sudden. *Northville, supra,* at 1049. These allegations were supported by affidavits identifying the source of the leakage as a pinhole in an underground pipe which was not discovered by the insured for approximately ten years. *Id.* Accordingly, the Court of Appeals held that the sudden and accidental exception to the pollution exclusion did not apply. *Id.*

In contrast, courts have held that where an underlying claim does not specify how the relevant hazardous substance was discharged into the environment, such claim did not clearly negate an interpretation that such discharge was sudden and accidental. See *State of New York v. Blank,* 27 F.3d 783, 791 (2d Cir.1994); *Avondale Industries, Inc. v. Travelers Indemnity Co.,* 887 F.2d 1200, 1205–06 (2d Cir.1989); and *Employers Insurance of Wausau v. Trico Products Corp.,* 1997 Lexis 19684, *52–61 (W.D.N.Y. Feb. 25, 1997). In particular, the underlying actions in *Blank, Avondale* and *Trico,* for which the insureds sought coverage from the insurers, did not sufficiently and unambiguously specify how the contaminants were discharged into the environment as to render it implausible that the discharges were both "sudden and accidental" and thereby negate coverage.

Similarly, in the instant case the alleged initial discharge of petroleum pollutants in the underlying state court action is not specified in the complaint filed in the underlying action which merely alleges that "[o]n or before November 2, 1993, a discharge of petroleum product contaminated the groundwater and soil at and in the vicinity of a gasoline service station and wholesale petroleum facility." Underlying Complaint ¶ 5. As such, the complaint in the underlying action alleges a discharge that is within the sudden and accidental exception to the pollution exclusions, such

that Defendant may not rely on the pollution exclusion to avoid defending and, if necessary, indemnifying Plaintiff with regard to the underlying action.

In sum, should the District Judge find that Plaintiff provided timely notice of an occurrence, then Defendant may not avoid providing Plaintiff with coverage under the insurance policies as to the underlying action and summary judgment as to this aspect of the motion should be DENIED.

### D. *Coverage Disclaimer*

■ Plaintiff also argues that Defendant's disclaimer of coverage is void as untimely. In particular, Plaintiff maintains that although the June 3, 1996 Letter by Plaintiff's then attorney advised Defendant of the DEC's investigation into a petroleum product spill at the Site, and the March 24, 1998 Letter by Plaintiff's current attorney advised Defendant of the underlying action, Defendant did not disclaim coverage until July 20, 1999. Plaintiff's Response Memorandum at 19–21. Plaintiff maintains that at least a question of fact exists as to whether Defendant's disclaimer of coverage more than one year after being advised of the underlying action and more than three years after learning of the occurrence was untimely such that Defendant has waived the right to disclaim coverage based on late notice. *Id.* at 20–21. Defendant maintains that a delay in disclaiming coverage will result in waiver of such disclaimer only where the delay results in prejudice to the insured which Plaintiff has failed to establish. Defendant's Reply Memorandum at 5–6. The court assumes for purposes of this discussion that Defendant did receive the June 3, 1996 Letter advising Defendant of an occurrence for which Plaintiff potentially faced financial responsibility to the Fund.

■ For actions involving bodily injury or death, an insurer is required to provide

497

"written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420(d) (McKinney 1985) (" § 3420(d)"). Defendant's disclaimer of coverage on June 20, 1999 would generally be considered untimely under § 3420(d) and Defendant would be found to have waived its right to disclaim coverage based on Plaintiff's untimely notification of an occurrence. *See, e.g., Burt Rigid Box, supra*, at 627–29 (unjustified delay in notice of occurrence in excess of three years untimely as matter of law); *Hartford Insurance Company v. County of Nassau*, 46 N.Y.2d 1028, 416 N.Y.S.2d 539, 389 N.E.2d 1061, 1062–63 (N.Y.1979) (unjustified delay of two months untimely as a matter of law); *Taradena v. Nationwide Mutual Ins. Co.*, 239 A.D.2d 876, 659 N.Y.S.2d 646, 648 (4th Dep't.1997) (unjustified delay of ten months untimely as matter of law). The instant case, however, does not involve bodily injury or death but rather is for environmental cleanup costs to which § 3420(d) is not applicable and a delay in disclaimer of a claim outside § 3420(d) must be shown to have resulted in prejudice to the insured in order to constitute a waiver by the insurer. *Burt Rigid Box, supra*, at 634 (insurer's delay of more than three years in disclaiming coverage based on insured's untimely notification of claim did not waive untimely notification as defense absent claim of death or bodily injury or resulting prejudice); *Incorporated Village of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612 N.Y.S.2d 441, 443 (2d Dep't 1994) (where § 3420(d) inapplicable to claim not involving death or bodily injury, insurer's untimely disclaimer effective absent insured's showing of prejudice resulting from insurer's unreasonable delay in disclaiming).

Plaintiff asserts that the Second Circuit has required that an insurer provide notice of disclaimer of coverage as soon as is reasonably possible after learning of the ground for disclaimer even in cases involving no bodily injury. Plaintiff's Response Memorandum at 19–20 (citing *Bluestein & Sander v. Chicago Ins. Co.*, 276 F.3d 119 (2d Cir.2002)). Plaintiff's reading of *Bluestein & Sander* is, however, inapposite as in that case, the Second Circuit held that the defendant insurance company was estopped from asserting any defense to coverage as the insurer's delay in disclaiming coverage was unreasonable and the insured would have been prejudiced by the delayed disclaimer given that the insurer had already provided the insured with a defense for two years prior to disclaiming coverage based on late notice. *Bluestein & Sander, supra*, at 122 (citing cases). As such, that the defendant insurance company was required to provide the insured with a defense was based not on the insurance company's untimely disclaimer of coverage but, rather, on the fact that Plaintiff would suffer prejudice if the insurers' delay disclaimer to coverage were permitted.

Plaintiff maintains that as a result of Defendant's delay in disclaiming coverage, Plaintiff has suffered prejudice in that Plaintiff "has been forced to attempt to negotiate a settlement with the State, and not to defend a suit by the State against it without the benefit of the insurance coverage owed to it be Defendant." Plaintiff's Response Memorandum at 21. This argument, however, fails as a matter of law.

Specifically, in *Albert J. Schiff, Associates, Inc. v. Flack*, 51 N.Y.2d 692, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980), the New York Court of Appeals held that an insurer would be estopped from disclaiming coverage where the insurer, without asserting or reserving a particular disclaimer ground, undertakes the defense which it is not otherwise provided to provide under the policy and on which the insured relies, causing the insured to suf-

fer the loss of the right to control its own defense. *Flack, supra,* at 87. In the instant case, the parties do not dispute that Defendant has yet to provide Plaintiff with any defense as to the underlying action pursuant to the insurance policies. Moreover, Plaintiff has not asserted, as is its burden, that it has lost the right to control its own defense. *See TIG Insurance Company, supra,* at 369 (finding insured suffered no prejudice resulting from insurer's delayed disclaimer where insured was represented throughout the relevant action by counsel of its choosing other than the insurer). *Cf. Bluestein & Sander, supra,* at 122–23 (presuming prejudice to insured under New York law where insurer who is not obligated to provide defense under insurance policy nevertheless undertakes defense of case in reliance on which the insured suffers detriment of losing right to control its own defense (citing *Flack, supra,* at 87)).

Accordingly, Plaintiff has failed to demonstrate any prejudice resulting from Defendant's otherwise untimely disclaimer of coverage and, as such, Defendant is not required to defend or indemnify Plaintiff with regard to the underlying action. Defendant's motion should be GRANTED as to this basis for summary judgment.

### CONCLUSION

Based on the foregoing, Defendant's motion for summary judgment (Doc. No. 6) should be GRANTED; Plaintiff's motion to remand the matter to New York Supreme Court (Doc. No. 16) is DENIED and Plaintiff's cross motion for discovery pursuant to Rule 56(F) (Doc. No. 18) is DENIED.

September 2, 2003.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.* Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.