OPINION OF THE COURT
 

 Ciparick, J.
 

 In this Navigation Law article 12 action, we are asked to decide a question left open in
 
 White v Long
 
 (85 NY2d 564): whether a faultless landowner on whose property petroleum has spilled is a “discharger” liable for the cleanup costs. While we refuse to impose liability based solely on ownership of contaminated land, we nonetheless conclude that where, as here, a landowner can control activities occurring on its property and has reason to believe that petroleum products will be stored there, the landowner is liable as a discharger for the cleanup costs.
 

 Defendant Village at Lakeside, Inc. owns a trailer park where defendant Vanessa Green leased a trailer pad. Green owned and maintained a 275-gallon, above-ground kerosene tank, which was used to heat her mobile home and was serviced by defendant H. Reynolds & Sons, Inc. In January 1992, the tank fell, spilling kerosene on the ground. No attempt was made to clean up the spill until the State intervened and removed the discharge at a cost in excess of $15,000,,
 

 The State then commenced this action
 
 against'
 
 all three defendants pursuant to Navigation Law article 12 to recover its cleanup costs. Although Green did not appear, Lakeside and Reynolds answered and asserted cross claims for indemnification against each other and Green. Lakeside then sought summary judgment dismissing the complaint against it, arguing that because it did not own, maintain or install the tank, it was not liable as a discharger under Navigation Law § 181 (1). The State cross-moved for summary judgment, contending that, as owner of the property on which the spill occurred, Lakeside was strictly liable for the cleanup.
 

 Supreme Court denied Lakeside’s motion and granted the State’s cross motion for summary judgment, finding Lakeside liable for the cleanup costs because, as owner of the contaminated property, it had control over the site and source of the discharge. The Appellate Division reversed, granted Lakeside’s motion and dismissed the complaint against it. The court
 
 *406
 
 concluded that Navigation Law § 181 (1) limits liability to “the owner of the
 
 system
 
 from which a discharge occurred, regardless of fault” (271 ÁD2d 11, 14 [emphasis in original]), and because Lakeside did not own the tank, it was not a “dis-charger” strictly liable for the cleanup costs. This Court granted the State leave to appeal
 
 [1]
 
 and we now reverse.
 

 Analysis
 

 Article 12 of the Navigation Law, commonly known as the Oil Spill Act, was enacted to ensure swift, effective cleanup of petroleum spills that threaten the environment (Navigation Law §§ 170, 171). To achieve this objective, the Legislature established the “Environmental Protection and Spill Compensation Fund,” which finances State cleanup efforts when the discharger is unknown, unwilling or unable to pay these costs (Navigation Law § 179). Once the Fund has disbursed monies for the cleanup, it must then seek reimbursement from a responsible party (Navigation Law § 187 [1]; § 188). To ensure prompt reimbursement, the Legislature has broadly defined those persons liable to the Fund:
 

 “Any person who has discharged petroleum shall be strictly liable, without regard to fault,
 
 for all cleanup and removal costs and all direct and indirect damages, no matter by whom sustained” (Navigation Law § 181 [1] [emphasis added]).
 

 A “discharge” is further defined as
 

 “any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of petroleum into the waters of the state or onto lands from which it might flow or drain into said waters” (Navigation Law § 172 [8]).
 

 Construing these provisions liberally to effect their legislative purpose
 
 (see,
 
 Navigation Law § 195), we conclude that Lakeside is a discharger within the meaning of Navigation Law § 181 (1).
 

 As the statutory language indicates, a “discharge” includes
 
 “any
 
 intentional or
 
 unintentional action or omission
 
 resulting
 
 *407
 
 in” the spilling of petroleum (Navigation Law § 172 [8] [emphasis added]). Nothing in the statutory language requires proof of fault or knowledge. To the contrary, the language is sufficiently broad to include landowners, like Lakeside, who have both control over activities occurring on their property and reason to believe that their tenants will be using petroleum products. As the owner and lessor of the trailer park, Lakeside had the ability to control potential sources of contamination on its property, including Green’s maintenance of a 275-gallon kerosene tank
 
 (see, Matter of White v Regan,
 
 171 AD2d 197, 199-201,
 
 lv denied
 
 79 NY2d 754;
 
 cf., State of New York v Shore Realty Corp.,
 
 759 F2d 1032, 1050-1051 [2d Cir]). Lakeside’s failure, unintentional or otherwise, to take any action in controlling the events that led to the spill or to effect an immediate cleanup renders it liable as a discharger
 
 (see, Huntington Hosp. v Anron Heating & Air Conditioning,
 
 250 AD2d 814, 815;
 
 State of New York v Montayne,
 
 199 AD2d 674, 675;
 
 Domermuth Petroleum Equip. & Maintenance Corp. v Herzog & Hopkins,
 
 111 AD2d 957, 958-959).
 

 By predicating.liability on a landowner’s control over the contaminated premises, we ensure that landowners are not in all instances liable for spills occurring on their property. A landowner, for example, who falls victim to a “midnight dumper,” or an errant oil truck that spills fuel, would not be liable as a “discharger” because, in those cases, the landowner could not control the events resulting in the discharge. Here, however, Lakeside, as owner of the property, was in a position to control the site and source of the discharge. As Green’s lessor, moreover, Lakeside could have reasonably expected Green to use fuel to heat her home; and it received the benefit of the lease as well as the cleanup. In these circumstances, Lakeside is liable for the discharge.
 

 Interpreting the term “discharger” to include landowners like Lakeside is consistent with the statute’s intent. Article 12 enables the State to respond swiftly to oil spills that threaten the environment, and ensures that adequate funds are available to effect the cleanups
 
 (see,
 
 Navigation Law § 171). By imposing strict liability on landowners, like Lakeside, article 12 ensures that a responsible party is readily available to reimburse the State for its cleanup costs. Limiting liability to those who actually cause or contribute to the discharge, as Lakeside urges, would discourage landowners from promptly cleaning up their contaminated land, leaving the State to shoulder the entire cost of the cleanup while it searches for the
 
 *408
 
 party at fault
 
 (see, White v Long,
 
 85 NY2d 564, 569; Koegel,
 
 Dischargers vs. Dischargers under the Navigation Law,
 
 NYLJ, July 25, 1995, at 1, col 1). Such a result could only frustrate future cleanups, causing unnecessary delays and depleting the Fund.
 

 The Fund’s ability to file a lien on real property owned by dischargers further reflects a legislative policy of holding landowners, like Lakeside, strictly liable for the cleanup costs (Navigation Law § 181-a).
 
 [2]
 
 Navigation Law § 181-a (1) provides that the Fund “shall have a lien” on real property “owned by a person liable to the fund” and “upon which the discharge occurred.” Although the owner must first be deemed liable under section 181 (1), the lien provision envisions landowners as ready sources of reimbursement. Landowners benefit from the State’s cleanup efforts and their property “very often is the only asset * * * which the Fund could go against” (Sponsor’s Mem in Support, Bill Jacket, L 1991, ch 488, at 6).
 

 Lakeside is not, however, without redress. In
 
 White v Long (supra,
 
 85 NY2d, at 568), we held that Navigation Law § 181 (5) allows a faultless landowner to seek contribution from the actual discharger, even though the landowner itself is liable as a discharger under section 181 (1). While we declined to address whether a landowner could be deemed a “discharger” under the Navigation Law, we recognized that proof of fault is not a predicate to liability and that more than one discharger may exist under Navigation Law § 181 (1). The fact that more than one party can be deemed a discharger suggests that liability under the statute is broad and inclusive, extending to landowners, like Lakeside, regardless of whether they actually caused or contributed to the discharge.
 

 Accordingly, the judgment appealed from and order of the Appellate Division brought up for review should be reversed, with costs, and the order of Supreme Court granting plaintiffs motion for summary judgment against defendant Village at Lakeside, Inc. reinstated.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley and Rosenblatt concur; Judge Graffeo taking no part.
 

 Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.
 

 [1]
 

 . The State discontinued its causes of action against Green and Reynolds, and Reynolds discontinued its cross claims against Lakeside and Green. The State’s appeal brings up for review the Appellate Division’s non-final order.
 

 [2]
 

 . Although the State did not rely below on the environmental lien provisions, we may take judicial notice of these provisions and their legislative history
 
 (see, Affronti v Crosson,
 
 95 NY2d 713, 720).