■ STATE OF NEW YORK, Appellant-Respondent, v B & P AUTO SERVICE CENTER, INC., et al., Defendants, and SMOOK & SONS

REALTY COMPANY et al., Respondents-Appellants. [814 NYS2d 367]—

Mercure, J.P. Cross appeals from an order of the Supreme Court (Malone, Jr., J.), entered October 18, 2004 in Albany County, which, inter alia, denied certain defendants' motion for summary judgment dismissing the complaint against them.

Following a report of a petroleum spill in 1987 and an extensive investigation, the Department of Environmental Conservation (hereinafter DEC) contracted for the cleanup of property owned by defendant Smook & Sons Realty Company and its partners (hereinafter collectively referred to as Smook) and leased as a gasoline station to defendant O.S. Free Corporation. Although Free notified Smook in April 1987 that an overfill of one of the site's underground tanks had occurred, DEC did not notify Smook that it was liable for cleanup and removal costs until 1996. In 1997, plaintiff filed an environmental lien on the property and commenced this Navigation Law article 12 action to recover the cost of remediation associated with the spill. Following joinder of issue and discovery, Smook moved for summary judgment dismissing the complaint and vacating the lien, asserting that it had relinquished control of the property to Free pursuant to a 1983 triple net lease. Plaintiff cross-moved for, among other things, partial summary judgment on the issue of liability against Smook. Supreme Court denied both motions on the ground that various questions of fact exist. Plaintiff and Smook cross-appeal.

The Navigation Law provides that "[a]ny person who has discharged petroleum shall be strictly liable, without regard to fault" for the costs of remediation (Navigation Law § 181 [1]). Reading this provision together with Navigation Law § 172 (8), which defines a "discharge" as "any intentional or unintentional action or omission resulting in" the spilling of petroleum, the Court of Appeals has held that an owner of contaminated property who has control over activities occurring on the property and reason to believe that petroleum products are stored there may be liable as a discharger (see State of New York v Green, 96 NY2d 403, 407 [2001]). Although liability may not be premised solely on ownership of contaminated property, "proof of fault or knowledge" is not required (id. at 407). Nor is liability

predicated on ownership of the tanks or petroleum system from which the spill issued (*see id.* at 405-406). Rather, the question of whether an otherwise faultless owner is liable as a discharger turns on the owner's "capacity to take action to prevent an oil spill or to clean up contamination resulting from a spill" (*State of New York v Speonk Fuel, Inc.*, 3 NY3d 720, 724 [2004]).

Thus, a landlord or subsequent purchaser who was not directly implicated in a discharge may nonetheless be held accountable for remediation costs because its contractual relationship with the party directly responsible for the spill conveys the requisite level of control over activities at the spill site to warrant the imposition of liability (*see id.* at 724; *State of New York v Green, supra* at 407-408). As this Court recently explained, "the owner of the legal title . . . can control the use of the property, and the activities which occur there, through the terms of the land contract. This degree of control is all that is required for liability" (*State of New York v Dennin*, 17 AD3d 744, 745 [2005], *lv dismissed* 5 NY3d 824 [2005] [citations omitted]).[1]

Here, contrary to Smook's argument, the requisite level of control was present. Smook admittedly knew that petroleum products would be stored on the premises and, indeed, the lease expressly recognized that Free could continue to operate the premises as a gasoline station throughout the 15-year term of the agreement.[2] As the landowner, Smook had the ability to control activity on the site through its lease agreement with Free. It is this ability to regulate the terms of the lease that distinguishes Smook's position from that of a landowner that falls victim to a "midnight dumper" or an errant oil truck that careens off the road and onto the property of an otherwise innocent landowner—accidents wholly outside of the landowner's control (*see State of New York v Green*, 96 NY2d 403, 407 [2001], *supra*). That Smook chose to relinquish day-to-day control is not relevant in determining liability to plaintiff under the Navigation Law.

1. We note that our analysis in *State of New York v Dennin* (*supra* at 745) did not turn on the fact that a "sham oral land contract" was involved, as the dissent asserts; instead, we acknowledged that the defendant retained legal title. It was this status as owner that gave him the ability to control the activities on the property through the *terms of the contract*, regardless of his actual day-to-day control.

2. As relevant here, the lease also provided that Free would reconvey title of the underground storage tanks at the site to Smook when the lease expired and provide Smook with a million dollar "gasoline tank liability" insurance policy during the lease term. In the event that Free failed to fulfill any obligation under the lease, Smook was permitted to perform the obligation, terminate the lease or, under certain circumstances, reenter the premises.

As plaintiff asserts, there are strong policy considerations for imposing liability on a landowner under these circumstances. Smook received both the benefit of the lease and of plaintiff's remediation of the property. If we were to accept Smook's argument that a landowner who has limited its right to reenter may not be liable, every gas station landowner could contract away its Navigation Law liability despite receiving the benefits of remediation, frustrating the intent of the Legislature (*see id.* at 407-408). Indeed, such a rule would contravene the express statutory directive that "[a]ny person who has discharged petroleum *shall be strictly liable, without regard to fault*" (Navigation Law § 181 [1] [emphasis added]; *see State of New York v Green, supra* at 407 [noting that the statutory language in Navigation Law § 172 (8) and § 181 (1) is sufficiently broad to include defendants who, by virtue of their status as landowners alone, are in a position to control the site and the source of the discharge]). In our view, a rule permitting a landowner to evade liability by contractually limiting his or her day-to-day control of the premises "creates opportunities for avoidance that would lead to an evisceration of the statute" (*State of New York v Montayne*, 199 AD2d 674, 675 [1993] [holding that supplier responsible for selecting the manner and means of delivery for petroleum may not evade liability on the ground that it has contractually delegated that responsibility to third party]).[3]

Inasmuch as Smook knew that petroleum products would be used on the site, had the requisite control over the site and concedes that delivery trucks overfilled underground storage tanks in the ordinary course of business at the gasoline station operating on the site, plaintiff's cross motion for summary judgment on the issue of liability must be granted. We note that our decision does not leave Smook without a remedy. "Navigation Law § 181 (5) allows a faultless landowner to seek contribution from the actual discharger, even though the landowner itself is liable as a discharger under section 181 (1)" (*State of New York v Green, supra* at 408). Accordingly, Smook remains free to seek

---

**3.** We are not persuaded that DEC's failure to notify Smook of the cleanup, its decision to deal exclusively with Free or the 1988 notes of its engineer suggesting that Free would be liable can be taken as evidence that Smook lacked the requisite level of control within the meaning of subsequent case law. As noted above, "[n]othing in the statutory language requires proof of fault or knowledge" on the part of the landowner and plaintiff is not required to delay clean up while it searches for all legally responsible parties (*State of New York v Green, supra* at 407-408). Moreover, this is not one of the rare factual situations in which estoppel may be invoked against a governmental agency to prevent it from performing its statutory duties (*see generally Matter of E.F.S. Ventures Corp. v Foster*, 71 NY2d 359, 369-370 [1988]; *Cendales v State of New York*, 2 AD3d 1165, 1166-1167 [2003]).

recovery for its damages (*see id.*; *see also Star Nissan v Frishwasser*, 253 AD2d 491 [1998]).

Rose and Kane, JJ., concur.

Carpinello, J. (dissenting). I respectfully dissent. In my view, defendant Smook & Sons Realty Company and its related partners (hereinafter collectively referred to as Smook) are entitled to summary judgment on the ground that Smook did not retain control of the activities on the subject property within the meaning of *State of New York v Green* (96 NY2d 403, 405 [2001]).

"[A]n owner of contaminated property is liable as a discharger for cleanup costs where the landowner could control the activities occurring on the property and had reason to believe that petroleum products would be stored there" (*State of New York v Robin Operating Corp.*, 3 AD3d 767, 768 [2004], citing *State of New York v Green, supra*). As reaffirmed in *State of New York v Speonk Fuel, Inc.* (3 NY3d 720, 724 [2004]), *Green* "predicated liability on a potentially responsible party's capacity to take action to prevent an oil spill or to clean up contamination resulting from a spill." Here, there is no dispute that Smook was the fee owner of the property and that it had actual knowledge that petroleum products would be stored on it. The issue thus narrows to whether Smook had the ability to control the activities on the property (*see State of New York v Green, supra*).

In support of summary judgment, Smook established that defendant O.S. Free Corporation was granted exclusive possession and use of the property, as well as ownership of the tanks themselves,[1] pursuant to their 1983 triple net lease. Smook further established that it exercised no day-to-day control over the activities on the property, had no dealings, financial or otherwise, with any lessee (*compare State of New York v Dennin*, 17 AD3d 744 [2005], *lv dismissed* 5 NY3d 824 [2005]), received notice of only one overspill in April 1987 and was never once notified by the Department of Environmental Conservation (hereinafter DEC) of its investigation into any discharge, particularly a December 4, 1987 discharge.[2] Having relinquished complete control and possession of both the land and the tanks to Free under the triple net lease, I find that Smook made a prima facie showing that it lacked the capacity to prevent an oil spill or clean up the contamination resulting therefrom.

---

1. Other than noting the lack of a bill of sale for the subject tanks, plaintiff did not controvert Smook's otherwise sufficient showing that it did not own the tanks.

2. In December 1996, Smook was first notified by DEC that it was liable for cleanup and removal costs in excess of $430,000 for a December 4, 1987 discharge on the property.

In opposition to summary judgment, although plaintiff argued that Smook was in a position to know about and report alleged "ongoing discharges" at the property, insufficient evidence was offered to establish that it was in any way involved in the activity, or inactivity, that led to the subject spill or that Smook even knew about the spill and thereafter allowed it to go unabated. Plaintiff argues, and the majority agrees, that Smook had control within the meaning of *Green* simply because it had the ability to negotiate the terms of its lease with Free.[3] In other words, according to plaintiff and adopted by the majority, a landowner can never escape Navigation Law liability for petroleum discharges by contracting away control of the premises to a tenant. I find this holding to be at odds with the language of the statute itself. Navigation Law § 181 (1), unlike other statutory provisions, simply makes no provision for the imposition of strict liability upon a landowner (*compare* Navigation Law § 181 [3] [a]; ECL § 17-1003 [4]; 17-1007 [2]; 42 USC § 9607 [a]). Rather, liability flows from control. To say that control over lease terms is itself control over the activities on the property relegates this statutory scheme to one imposing strict liability based on status alone, with the possible exception of a midnight dumper or errant truck accident, even though the Legislature has not so provided.

In other words, while I completely agree with the general sentiment that strong public policy considerations exist for imposing liability on a landowner under these circumstances, countenancing such argument is at odds with the clear absence of statutory language imposing strict liability upon landowners under Navigation Law § 181 (1), as well as the Court of Appeals' express refusal "to impose liability based *solely* on ownership of contaminated land" since all landowners clearly have the ability to regulate lease terms (*State of New York v Green*, 96 NY2d 403, 405 [2001], *supra* [emphasis added]).

In my view, there is no greater evidence that Smook had no authority to control the activities occurring on the property than DEC's own failure to ever notify Smook of its investigation or decision to clean it up, despite knowledge from the onset that

---

**3.** Reliance on our prior decision in *State of New York v Dennin* (17 AD3d 744 [2005], *lv dismissed* 5 NY3d 824 [2005]) is unwarranted as it involved a sham "oral land contract" between family members six years after an action had been commenced to recover cleanup costs. Moreover, the three-year net lease between the defendant daughter-in-law, who admittedly was the owner of the petroleum system, and the tenant operating the gas station was markedly different than the subject lease.

Smook was the fee owner.[4] Otherwise stated, DEC's decision to deal exclusively with Free for nine years without once notifying Smook of its involvement in the matter is itself evidence that Smook had no control over the activities occurring on the property. Furthermore, without notice of the subject contamination, Smook lacked the capacity to clean up the site (*cf. State of New York v Speonk Fuel, Inc.*, 3 NY3d 720 [2004], *supra*).

I would modify Supreme Court's order and grant summary judgment to Smook.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied plaintiff's cross motion for partial summary judgment on the issue of liability; cross motion granted; and, as so modified, affirmed.

---

4. Handwritten notes of a DEC engineer dated June 4, 1988 identify Smook as the property owner but indicate that the tenant or operator would be liable because it had "actual possession and control of the product." Moreover, on March 19, 1991, Free alone signed an agreement granting DEC permission to enter its property for cleanup purposes.