[933 NYS2d 114]

State of New York, Respondent, v Getty Petroleum Corporation et al., Defendants, and M&A Realty, Inc., Appellant.

Third Department, November 3, 2011

**APPEARANCES OF COUNSEL**

*Young, Sommer, Ward, Ritzenberg, Baker & Moore, L.L.C.*, Albany (*Kirstin Carter Rowe* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Arnold* of counsel), for respondent.

**OPINION OF THE COURT**

LAHTINEN, J.

Defendant M&A Realty, Inc. contends that the procedures used to place an environmental lien on its real property were not authorized by the underlying statute (*see* Navigation Law § 181-a), and that the procedures used violated its due process rights. A gas station has been operated for over 30 years on real property currently owned by M&A in the Town of Hyde Park, Dutchess County. Prior to M&A purchasing the property, there had been petroleum discharges in 1979 and 1983 that resulted in the Department of Environmental Conservation (hereinafter DEC) retaining contractors to clean up the spills (*see* Navigation Law § 176). M&A purchased the underground petroleum and storage dispensing system at the property in 1994 and purchased the rest of the property in 2002. According to DEC, monitoring wells at and near the premises detected significant increases in petroleum products in 2003. DEC determined that

this constituted a new discharge; a determination that M&A has at all times vigorously contested as it contends that the petroleum detected in 2003 was related to the prior spills and not the result of a new spill.

M&A excavated and replaced the underground tanks in 2003. Nevertheless, DEC asserted that continued remediation from 2003 to 2009 related to the alleged 2003 spill resulted in costs of about $208,000, which were paid by the State Environmental Protection and Spill Compensation Fund (hereinafter the Fund). The Attorney General demanded payment of these clean-up costs and advised M&A that failure to do so would result in the commencement of a civil action and the filing of an environmental lien. Since it was M&A's position that all such costs were related to the prior spills, it did not pay. Its attorneys requested a conference or hearing regarding M&A's position, but the request was not granted. Instead, plaintiff served a verified complaint commencing this action in January 2010 and a notice of an environmental lien on M&A's real property was filed in February 2010. M&A moved for summary judgment on its counterclaim challenging the lien procedures. M&A argued that a proper reading of Navigation Law § 181-a required that, before a lien was filed, there must be a judicial determination that the person who owns the property is liable to the Fund and further that the manner in which the environmental lien was imposed upon it violated due process. Supreme Court denied the motion and M&A appeals.

"The Legislature enacted the Oil Spill Act [Navigation Law art 12] to prevent the unregulated discharge of petroleum and to accomplish speedy, effective cleanups when spills occur" (*State of New York v Speonk Fuel, Inc.*, 3 NY3d 720, 723 [2004] [citations omitted]). "To achieve this objective, the Legislature established the [Fund], which finances [s]tate cleanup efforts when the discharger is unknown, unwilling or unable to pay these costs" (*State of New York v Green*, 96 NY2d 403, 406 [2001] [citation omitted]). When the Fund pays for clean-up costs, it can seek reimbursement from a party responsible for the discharge (*see* Navigation Law § 187) and, as relevant here, an environmental lien can be filed on property (*see* Navigation Law §§ 181-a, 181-b). The provisions of the Oil Spill Act are "liberally construed to effect its purposes" (Navigation Law § 195; *see State of New York v Speonk Fuel, Inc.*, 3 NY3d at 723-724).

M&A argues that the statutory language of Navigation Law § 181-a (1), as well as the legislative history, reveals that a

judicial determination of liability is a prerequisite to filing an environmental lien. The statute provides:

> "The [F]und shall have a lien for the costs incurred by the [F]und for the cleanup and removal of a discharge and for the payment of claims for direct and indirect damages as a result of a discharge upon such real property located within the state:
>
> "(a) owned by a *person liable to the [F]und* for such costs under [Navigation Law § 181] at the time a notice of environmental lien is filed; and
>
> "(b) upon which the discharge occurred" (Navigation Law § 181-a [1] [emphasis added]).

Noting that elsewhere in the Oil Spill Act the phrase "potentially liable" is used (Navigation Law § 181-b [5]), M&A asserts that the absence of the word "potentially" in Navigation Law § 181-a (1) (a) connotes a legislative intent to require a judicial determination of liability before an environmental lien can be filed. We are unpersuaded.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature [and] [t]he starting point is always to look to the language itself" (*State of New York v Patricia II.*, 6 NY3d 160, 162 [2006] [internal quotation marks and citation omitted]). Although the words of the statute control if unambiguous, consideration may also be given to corresponding legislative history (*see Riley v County of Broome*, 95 NY2d 455, 463 [2000]). "Our objective . . . is 'to discern and apply the will of the Legislature, not the court's own perception of what might be equitable' " (*Matter of Orens v Novello*, 99 NY2d 180, 185 [2002], quoting *Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]).

■ The statute makes no specific mention of a judicial determination as a prerequisite to filing a lien. The absence of the word "potentially" in Navigation Law § 181-a (1) (a) is simply insufficient to provide a sound basis for reading into the statute such a requirement. If the Legislature had intended a prefiling judicial determination of liability, it undoubtedly would have not only affirmatively so stated, but also would have provided at least cursory guidance to pertinent procedural issues.[1] The legislative history ties the environmental lien to a sense of

---

1. For example, who would make the determination: a judge, an administrative law judge, a hearing officer, or someone else? What level of proof would

*(n. cont'd)*

urgency to act as it reveals a concern about a party frustrating Fund collection efforts by quickly disposing of the property (*see* Sponsors' Mem, Bill Jacket, L 1991, ch 488). It seems incongruent with such concern that, if the Legislature intended a prefiling judicial determination, it would not set forth expedited procedures for such a determination. It also merits noting that Navigation Law § 181-b (5), which uses the phrase "potentially liable," addresses the contents that a lien must contain. However, if Navigation Law § 181-a (which does not include the word "potentially") mandated a judicial determination of liability before a lien could be filed (and thus before the contents became relevant), the use of "potentially" in section 181-b (5) would be surplusage. This is not to suggest that the statute is a model of clarity, and the parties have extracted phrases from the legislative history arguably supportive of their respective positions. Nevertheless, when read in the context of the entire statutory article, considered in light of the statutory purpose and accorded the legislatively directed liberal interpretation, we conclude that Navigation Law § 181-a (1) does not require a prefiling judicial determination of liability for an environmental lien.

▆ Next, we consider whether that lack of a prefiling judicial determination runs afoul of due process.[2] Initially, we note that "legislative enactments are presumed valid and that one who challenges a statute bears the burden of proving the legislation unconstitutional beyond a reasonable doubt" (*Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.*, 71 NY2d 313, 319-320 [1988]; *see State of New York v Dennin*, 17 AD3d 744,

---

be required at this early procedural point: substantial evidence, preponderance of the evidence or something else? Would the hearing be akin to an administrative proceeding with its relaxed rules of evidence or would the evidentiary standards of a civil trial control? While M&A urges the highest level as to each of these issues, that would essentially result in a trial on the merits before a lien could be filed and, thus, eliminate an important function of the lien. In fact, even in *Reardon v United States* (947 F2d 1509 [1st Cir 1991])—a case upon which M&A relies—the First Circuit Court of Appeals indicated that a lower standard of proof such as "probable cause or reason to believe" would be sufficient (*id.* at 1522).

2. Although M&A challenges the statute under the State and Federal Constitutions, it does not contend that, in this context, the State Constitution provides protection beyond the Federal Constitution. And, the Court of Appeals has applied the analysis articulated by the United States Supreme Court under the Federal Constitution to civil law procedural due process claims (*see e.g. Property Clerk of Police Dept. of City of N.Y. v Harris*, 9 NY3d 237, 246 [2007]; *Matter of Uniform Firefighters of Cohoes, Local 2562, IAFF, AFL-CIO v City of Cohoes*, 94 NY2d 686, 691-692 [2000]).

747 [2005], *lv dismissed* 5 NY3d 824 [2005]). Plaintiff does not dispute that the environmental lien constitutes an impairment to a significant property interest such that due process protection is implicated (*see Connecticut v Doehr*, 501 US 1, 11 [1991]). The familiar factors weighed in assessing what process is due are set forth in *Mathews v Eldridge* (424 US 319, 335 [1976]) and include: "(1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used and the probable value of other procedural safeguards; and (3) the government's interest" (*County of Nassau v Canavan*, 1 NY3d 134, 142 [2003]; *see State of New York v Dennin*, 17 AD3d at 746).

The environmental lien does not deprive M&A of the possession and use of its property, but it does cloud title and affects its ability to transfer the property. While the risk of erroneous deprivation is not reduced to the same level as matters supported by documentary proof (*see Connecticut v Doehr*, 501 US at 14; *Diaz v Paterson*, 547 F3d 88, 98-99 [2008], *cert denied* 557 US —, 129 S Ct 2789 [2009]), nevertheless the risk is low given that liability under the Oil Spill Act is strict, joint and several, and the statute has been broadly and liberally applied to owners of property where a petroleum discharge is discovered (*see e.g. State of New York v Speonk Fuel, Inc.*, 3 NY3d at 723-724; *State of New York v Green*, 96 NY2d at 406-407; *State of New York v C.J. Burth Servs., Inc.*, 79 AD3d 1298, 1300-1301 [2010], *lv dismissed* 16 NY3d 796 [2011]; *State of New York v B & P Auto Serv. Ctr., Inc.*, 29 AD3d 1045, 1046-1047 [2006], *appeal dismissed* 7 NY3d 864 [2006]). M&A was given prior notice that the lien would be filed and the lien was not filed until the underlying action was commenced. Although there was not a prefiling hearing provided, M&A can challenge the lien either within the context of the pending action or seek a vacatur under Lien Law § 59 (*see* Navigation Law § 181-d; *Matter of Art-Tex Petroleum v New York State Dept. of Audit & Control*, 93 NY2d 830, 832 [1999]). Plaintiff contends that these procedures provide an available quick postdeprivation review of the lien. As for the third element, we have previously observed that "plaintiff has a strong interest in protecting and preserving its lands and waters" as well as "in ensuring reimbursement of taxpayer moneys expended in cleaning up polluted sites when the discharger is unwilling to do so on his or her own accord" (*State of New York v Dennin*, 17 AD3d at 746).

M&A places considerable reliance on *Reardon v United States* (947 F2d 1509 [1st Cir 1991]), where the First Circuit Court of

Appeals found due process violations in the lien provisions of the Comprehensive Environmental Response, Compensation, and Liability Act (hereinafter CERCLA). There are, however, several important distinctions between the procedures in *Reardon* and those used here. For example, some germane issues were conceded by the federal government to be "extremely fact-intensive" under CERCLA (*id.* at 1519), whereas liability under the Oil Spill Act is, as previously noted, quite straightforward. Also in *Reardon*, the lien was filed before the action was commenced and the Court noted that this could result in a delay of several years before the landowners received a hearing regarding the lien (*id.*). Here, the action was commenced before the lien was filed and avenues exist to obtain review of the lien within the context of the pending action or through Lien Law article 3. Further, here, unlike *Reardon*, prior notice was given before the lien was filed and the amount of the lien was established. After weighing the *Mathews* factors and noting the distinctions between this case and the lien provisions of CERCLA in *Reardon*, we are not persuaded that M&A has established as a matter of law that the Oil Spill Act violates due process because it lacks a prefiling hearing procedure.

Next, we address the adequacy of the postdeprivation review procedures. The determination upon which the filing of the environmental lien rested was made by a governmental agency. "It is well settled that procedural due process in the context of an agency determination requires that the agency provide an opportunity to be heard in a meaningful manner at a meaningful time" (*Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235, 260 [2010], *cert denied* 562 US —, 131 S Ct 822 [2010] [citation omitted]). It follows that where a landowner contests the filing of an environmental lien, due process requires that the agency expeditiously come forward with, at a minimum, substantial evidence supporting each element necessary for the lien.[3]

M&A urges that the reality of the postdeprivation review procedures is that those procedures can take a significant amount of time. Plaintiff counters that the procedures are speedy, and statutory language—including the availability of an order to show cause in which short deadlines can be judicially established—reflects that quick review should be available for a

---

3. Although substantial evidence applies to the sufficiency of proof to allow the lien to continue during the pendency of the action, the underlying action requires plaintiff to prove its case by a preponderance of the evidence.

landowner. In any event, M&A failed to show that expeditious review was not available and, as the proponent of summary judgment, its failure to make such a showing precludes it at this procedural point in the case from the relief it sought.

PETERS, J.P., SPAIN, STEIN and EGAN JR., JJ., concur.

Ordered that the order is affirmed, without costs.