Spain, J.P.
Appeal from a judgment of the Supreme Court (Devine, J.), entered December 28, 2010 in Albany County, which, among other things, awarded plaintiff damages from defendant Slezak Petroleum Products, Inc.
Since 1967, defendant Slezak Petroleum Products, Inc. (hereinafter defendant) has owned real property located at 313 East Main Street in the City of Amsterdam, Montgomery County, on which there is a gasoline station[1] with active underground storage tanks and a convenience store (hereinafter the spill site). In October 2004, gasoline fumes of unknown origin were detected at a warehouse located approximately one quarter of a mile from the spill site and a subsequent investigation directed by the Department of Environmental Conservation (hereinafter DEC) established that the vapors had infiltrated nearby sewer lines and residences. Integrity tests performed by a company retained by defendant on one of its underground unleaded gasoline storage tanks disclosed that the tank failed a tightness test; it was removed and holes were observed on the bottom. Subsequent subsurface investigation confirmed the presence of extensive liquid petroleum and petroleum contaminated soil at the spill site, which was removed. Defendant declined to undertake further investigation for financial reasons.
*1201 DEC hired Empire Geo Services, Inc. to investigate further the extent of the contamination and migration from defendant’s storage tanks. Empire determined that the groundwater flow was consistently from the spill site in a southerly direction toward the warehouse and affected residences, and that the spill site was at the top of the contamination plume. Also, the highest concentrations of petroleum were consistently found in the monitoring wells at the spill site and downgradient from it. Soil borings from the spill site revealed high concentrations of petroleum hydrocarbons consistent with gasoline and the additive MTBE, which was first added to gas in the mid-1980s; tests on a liquid petroleum sample captured in monitoring wells at one of the affected residences established that the sample was minimally weathered mid-grade gasoline produced after 1990. A sample taken from a monitoring well between two other affected residences downgradient from the spill site produced the same result.
DEC determined that defendant’s property was the only site in close proximity to the impacted areas that could have been a significant source of post-1990 gasoline. After investigating other potential sources of the contamination, including two nearby gas stations that were ruled out as potential contributors, DEC ultimately concluded that the spill site was the origin of all of the petroleum contamination in issue, i.e., at defendant’s site, the warehouse and the affected residences; DEC notified defendant that it was responsible for the remediation, which defendant declined to undertake but permitted DEC access to the spill site. DEC undertook extensive remediation measures to remove the contamination at the site and nearby affected business and residences.
Plaintiff commenced this action in 2006 pursuant to Navigation Law article 12 seeking to recover its remediation costs and penalties, as relevant here,[2] against defendant, alleging it is strictly liable for all cleanup costs associated with the petroleum discharge from its underground storage tanks and dispensing system. After this Court affirmed Supreme Court’s denial of defendant’s motion for a change of venue (State of New York v Slezak Petroleum Prods., Inc., 78 AD3d 1288 [2010]), plaintiff moved for partial summary judgment on its first cause of action seeking a finding that defendant is strictly liable for all cleanup and removal costs and prejudgment interest. Supreme Court *1202 granted the motion and awarded plaintiff $666,538.81 with prejudgment interest (of $260,694.72) and the parties subsequently stipulated to an assessment of a $10,000 penalty against defendant (see Navigation Law § 192); the court thereafter entered a judgment for $937,233.53. Defendant now appeals.
Supreme Court correctly granted plaintiffs motion for partial summary judgment. Under Navigation Law article 12, “[a]ny person who has discharged petroleum” is strictly liable for cleanup and remediation costs (Navigation Law § 181 [1]). The Court of Appeals has read this provision together with Navigation Law § 172 (8), which defines a “discharge” as “any intentional or unintentional action or omission resulting in” a petroleum spill, holding that while liability for remediation costs cannot be premised solely on land or system ownership, owners who have “control over activities occurring on their property” and reason to believe that petroleum products are stored there are liable as a discharger (State of New York v Green, 96 NY2d 403, 407 [2001]; see State of New York v Speonk Fuel, Inc., 3 NY3d 720, 723-724 [2004]; State of New York v B & P Auto Serv. Ctr., Inc., 29 AD3d 1045, 1046-1047 [2006], lv dismissed 7 NY3d 864 [2006]). Thus, liability is predicated on “control over the contaminated premises” (State of New York v Green, 96 NY2d at 407), that is, a “party’s capacity to take action to prevent an oil spill or to clean up contamination resulting from a spill” (State of New York v Speonk Fuel, Inc., 3 NY3d at 724). Imposition of strict liability does not require proof of fault, knowledge or wrongful acts or omissions (see State of New York v Green, 96 NY2d at 407; State of New York v C.J. Burth Servs., Inc., 79 AD3d 1298, 1300 [2010]), i.e., owners with such capacity are strictly liable as a discharger, “even in the absence of any evidence that the owner caused or contributed to the discharge” (State of New York v Dennin, 17 AD3d 744, 745 [2005], lv dismissed 5 NY3d 824 [2005]; see State of New York v C.J. Burth Servs., Inc., 79 AD3d at 1300), and their strict liability cannot be avoided by demonstrating that another party actually caused the discharge or contributed to the contamination in issue (see State of New York v Robin Operating Corp., 3 AD3d 767, 769 [2004]).
Here, it is undisputed that defendant is the owner of the spill site as well as the petroleum tanks and system from which the spill emanated, had control over the activities on and the use of its property, and was aware that petroleum products were stored in underground tanks on and sold from its property. Thus, defendant clearly had the “capacity to take action to prevent an oil spill or to clean up contamination resulting from a spill” *1203 (State of New York v Speonk Fuel, Inc., 3 NY3d at 724). The central dispute on plaintiffs motion was whether the leakage or discharge on defendant’s property migrated from the spill site and was the source of the off-site contamination at the nearby affected residences and warehouse. While defendant conceded that it had a “small spill” at its site that it claims to have remediated without any migration offsite, it alleged that spills and activities at other nearby locations were the source of the contamination at the residences and warehouse.
In support of its motion, plaintiff offered the affidavits of two experts, each a DEC environmental engineer directly involved in the investigation and remediation, who opined, to a reasonable degree of scientific certainty, that defendant’s property was the principal source of the contamination in issue, which migrated downgradient from the spill site to the other affected properties in the neighborhood. Their conclusions were based upon extensive investigations, including groundwater studies, geophysical surveys, over 100 groundwater monitoring wells, soil borings and soil vapor extractions, and subsurface geological studies. The uncontroverted evidence established that the active underground gasoline tank excavated from the spill site had holes in the bottom, liquid petroleum was found in the tank grave after the excavation, and high concentrations of gasoline hydrocarbons and MTBE were found in the soil and groundwater at the spill site; the vapors detected at the warehouse and affected residences were identified as a petroleum product; forensic analyses of the liquid petroleum found downgradient at one of the affected residences established that it was post-1990 unleaded gasoline, and the tanks at the spill site were the only nearby retail source of unleaded gasoline produced after 1990; the groundwater studies identified the spill site as being at the top edge (highest point) of the contamination plume, with groundwater migrating from the spill site in a southerly direction toward the impacted sites; and there was a buried stream channel in the bedrock on the spill site that provided the migration pathway for the gasoline contamination to travel to the impacted areas, and there was a continuous impacted area— with no breaks in contamination — between the spill site and the downgradient impacted warehouse. Further, DEC’s investigation of other possible sources of contamination revealed no evidence that any petroleum contamination had migrated from any site north of the spill site to the spill site. Thus, plaintiff established its entitlement to partial summary judgment on its claim that defendant is strictly liable as a discharger for all cleanup and remediation costs associated with the contamination, shifting the burden to defendant to raise a triable issue of *1204 fact with regard to its liability (see CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Defendant failed to do so.
In opposing plaintiffs motion, defendant submitted an affidavit of its principals refuting defendant’s liability for the off-site contamination and suggesting that it came from other nearby businesses. That affidavit is speculative and unsupported by any evidentiary or expert proof excluding defendant as a contributing discharger. Significantly, plaintiff was not required — in order to establish defendant’s strict liability — to exclude other parties as contributing dischargers, and defendant cannot avoid liability or defeat summary judgment by establishing that other parties may have contributed to the discharge and contamination (see State of New York v Robin Operating Corp., 3 AD3d at 769).[3]
The only other evidence submitted by defendant to defeat summary judgment consists of an affidavit of William Dickerson, a geologist and environmental analyst, which fails to offer an opinion to a reasonable degree of scientific certainty. Dickerson’s affidavit contains only conclusory and speculative assumptions and assertions (consisting mostly of what he perceived to be unanswered questions of fact requiring trial), unsupported by an evidentiary foundation, which would not support a verdict in defendant’s favor if offered at trial (see Romano v Stanley, 90 NY2d 444, 451-452 [1997]; Bergstrom v McChesney, 92 AD3d 1125, 1127-1128 [2012]). While Dickerson makes fleeting reference to a July 2005 report prepared by Alpha Geoscience (which plaintiff submitted to Supreme Court in support of its motion), he merely qualifiedly suggests that “[i]f the Alpha Geoscience reports[4] are true, there was no migration of a petroleum spill off-site.” However, that report does not conclude that migration from the spill site did not occur but, rather, suggested further study of the issue. Dickerson’s affidavit, as such, fails to *1205 “contain sufficient allegations to demonstrate that the conclusions it contains are more than mere speculation” and is “devoid of any reference to a foundational scientific basis for its conclusion[ ]” (Romano v Stanley, 90 NY2d at 452). Thus, it has no probative value and is insufficient to defeat plaintiff s motion.
Likewise, the affidavit of defendant’s counsel, who does not claim any expertise in applicable scientific disciplines or to possess personal knowledge of relevant matters on a material disputed issue, does not defeat plaintiffs motion (see Bergstrom v McChesney, 92 AD3d at 1126-1127). The possibility that other dischargers contributed to the off-site contamination is simply irrelevant to defendant’s liability as an established discharger (see State of New York v Green, 96 NY2d at 406-408; State of New York v Robin Operating Corp., 3 AD3d at 769), and plaintiffs motion establishing defendant’s strict liability was properly granted.
Defendant’s remaining claims have been examined and are either unpreserved or lack merit. Defendant’s advance request for permission to appeal this Court’s eventual order here is premature (see CPLR 5513 [b]).
Kavanagh, Stein, McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.

. Defendants Mill Town Enterprises, Inc. and Michael Hastings operated the gas station.

. None of the other named defendants appeared in the action. Defendant Brian Soto, the owner of Salinas Auto Sales at 302 East Main Street, a site investigated as a potential discharger, was later determined by DEC not to be a contributor to the spills at issue.

. Defendant may, of course, seek contribution from other actual dischargers (see State of New York v Green, 96 NY2d at 408; State of New York v Robin Operating Corp., 3 AD3d at 769).

. While defendant now also relies upon a November 2005 report by Alpha Geoscience prepared after it conducted further investigation, that report was not submitted to or considered by Supreme Court on this motion and we decline to consider it for the first time on this appeal (see Paoletti v Karian, 266 AD2d 691, 691 [1999]; Campbell v Finke, 187 AD2d 780, 780 [1992]). Indeed, in its decision, the court rejected Dickerson’s conclusory assertions, noting that “the [July 2005] report . . . makes no such finding” of non-migration from the spill site, and that the report’s author had conceded, in an August 2005 letter, that “a more comprehensive investigation” was needed but defendant could not afford it. Thus, we do not read the court’s decision as addressing the November 2005 report, which is dehors the record.